Luis GONZALES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–05–00066–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 15, 2005.

Discretionary Review Refused May 24, 2006.

Randy McDonald, Houston, TX, for Appellant.

Eric Kugler, Asst. Dist. Atty. of Harris County, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant was charged by indictment with capital murder for kidnapping and murdering his ex-wife, Maria Villatoro. TEX. PEN.CODE ANN. § 19.03 (Vernon Supp. 2005). After a plea of not guilty, the jury found appellant guilty and assessed punishment at life in prison. On appeal, appellant argues that (1) appellant's confession was inadmissible because it did not comply with Texas law, (2) the *corpus delicti* of kidnapping was not sufficiently established to support a charge of capital murder, (3) the evidence was legally and factually insufficient to support conviction, (4) the trial court erred in allowing hearsay testimony, and (5) certain evidence should not have been admitted because it was improperly obtained by a warrantless search.

We affirm.

## BACKGROUND

Appellant and Villatoro were married and had two daughters together. Appellant became abusive to Villatoro and their daughters. Eventually, Villatoro left appellant and had him arrested on assault charges. Villatoro divorced appellant, later met another man, and remarried. She made efforts to avoid appellant and to prevent him from knowing where she was.

Appellant became upset about Villatoro's new marriage and began searching the city, hoping to find out where they lived. Appellant finally located the daycare for his two daughters. On July 31, 2003, appellant waited outside the daycare for Villatoro to arrive. After Villatoro picked up her daughters, appellant forced his way into Villatoro's car, showed her a handgun, and told her to drive off. Appellant spent between two and three hours in the car with Villatoro and her daughters, arguing with her, telling her where to drive, and looking for an isolated place to kill her. Eventually, appellant led her to a remote area of Katy, Texas. He shot Villatoro once while she was in the driver's seat, moved her to the passenger seat, and then shot her two more times.

At 7:30 that night, appellant called his brother, Andres Gonzales, and told Andres to meet him at a parking lot in Katy. Andres drove appellant's car to the location. There he saw appellant in Villatoro's car with a dead body in the passenger seat. Andres followed appellant to an isolated construction site, where appellant moved the girls into his car and left with his brother, leaving Villatoro's body in her car.

After dropping Andres off, appellant drove with his daughters to Mesquite, Texas. He pulled into a parking lot near a Greyhound bus station and purchased tickets to Santa Barbara, California.

Meanwhile, a worker at the construction site found Villatoro's body and contacted police. Based on their initial investigation, appellant became an immediate suspect and an Amber Alert was issued notifying the public that the daughters were missing. A man who had been at the Greyhound bus station in Mesquite learned about the Amber Alert and told police that he had seen appellant. Upon verifying appellant's destination, Houston authorities notified the Santa Barbara Police Department.

The Santa Barbara police arrested appellant as the bus came into the station. At the police station, he was read his *Miranda* rights. Appellant submitted to interrogation and eventually confessed to the murder. During this time, Mesquite police impounded appellant's car and, under instruction from Houston police, retrieved the handgun used in the shooting.

## Custodial Confession

For his fourth point of error, appellant argues that his confession was erroneously admitted because it did not comply with Texas law.

### A. Standard of Review

■ We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App.2002).

■ Applying this standard, we afford deference to the trial court's determination of the historical facts but decide de novo whether the trial court erred by misapplying the law to the facts. *See Guz-*

*man v. State*, 955 S.W.2d 85, 89 (Tex.Crim. App.1997). If no fact findings are filed, we presume that the trial court made implicit findings of fact that support its ruling, provided these facts are supported by the record. *See Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App.2000). We review de novo application-of-law-to-fact questions that do not turn on an evaluation of credibility and demeanor. *See Guzman*, 955 S.W.2d at 89.

■ Article 38.22 of the Texas Code of Criminal Procedure controls the admissibility of custodial confessions in a criminal trial. TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). In this case, whether the requirements of article 38.22 were satisfied is an application-of-law-to-fact question. *Cf. Vann v. State*, 93 S.W.3d 182, 184 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (applying de novo review to question of compliance with TEX. FAM.CODE ANN. § 52.02(b)). In making this determination, we will view the evidence at the suppression hearing in the light most favorable to the trial court's ruling and review de novo the trial court's resolution of the question. *See id.*

### B. Analysis

■ After the police arrested appellant at the bus station in Santa Barbara, they took him into custody. Detective Velasco of the Santa Barbara Police Department read appellant his rights and proceeded to interrogate him. The interrogation was recorded on video and audio tape. The trial court admitted these tapes into evidence over appellant's objection.

■ Appellant argues that the interrogation violated the requirements of Texas Code of Criminal Procedure article 38.22, making the interrogation inadmissible at

trial.[1] Section 3 of the article prescribes the requirements to make oral custodial statements admissible at trial and, among other things, codifies the *Miranda* warnings required to be given prior to custodial confessions. TEX.CODE CRIM. PROC. ANN. art. 38.22 § 3(a); *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). However, section 3 requires a fifth warning not explicitly required under *Miranda,* namely that the accused "has the right to terminate the interview at any time." TEX.CODE CRIM. PROC. ANN. art 38.22, §§ 2(a), 3(a)(1)(2). The *Miranda* warnings that appellant received in California did not contain this fifth warning, and appellant argues that this rendered the statements inadmissible for his trial.

Appellant, however, ignores section 8 of article 38.22 in making his argument. Section 8 provides that a statement obtained in another state in compliance with the laws of that state is admissible. TEX.CODE CRIM. PROC. ANN. art. 38.22 § 8(1). California does not have a statute similar to Texas Code of Criminal Procedure article 38.22. Instead, they directly observe the requirements set out by the United States Supreme Court in *Miranda,* 384 U.S. at 479, 86 S.Ct. at 1630; *People v. Gurule,* 28 Cal.4th 557, 123 Cal.Rptr.2d 345, 381–82, 51 P.3d 224 (2002).

During the hearing on the Motion to Suppress Oral Statements, the State offered the *Gurule* case to the court to establish California law on obtaining custodial confessions. The State also received testimony from Detective Velasco stating that the warnings that he gave to appellant prior to the interrogation were in compli-

ance with California law. Detective Velasco also read at the hearing the warnings he read to appellant in English and in Spanish. These warnings tracked the language of *Miranda.* Appellant did not object to the evidence of California law, nor did he offer any contradicting evidence. Therefore, the State met its burden in showing that the requirements of article 38.22 had been met.

We hold that the trial court did not abuse its discretion in admitting appellant's oral statement into evidence. Appellant's fourth point of error is overruled.

## Kidnapping *Corpus Delicti*

█ For his third point of error, appellant argues that the State failed to establish the *corpus delicti* of capital murder independent of the appellant's extra-judicial admission. If a defendant is charged with capital murder based on Texas Penal Code subsection 19.03(a)(2), as in the present case, the *corpus delicti* of capital murder consists of the *corpus delicti* of murder and the underlying offense. *Gribble v. State,* 808 S.W.2d 65, 71 (Tex.Crim.App. 1990). In appellant's brief, however, he admitted that the *corpus delicti* of murder was established at trial. Therefore, we only consider whether the State sufficiently established the *corpus delicti* of the underlying offense of kidnapping.

## A. Standard of Review

█ A criminal conviction cannot be based upon a defendant's extrajudicial confession unless the confession is corroborated by independent evidence tending to establish the *corpus delicti.* *Id.* at 70. Texas defines *corpus delicti* as harm

---

1. In this point of error, appellant urges us to overrule *Nonn v. State,* a Court of Criminal Appeals case. *See Nonn v. State,* 117 S.W.3d 874 (Tex.Crim.App.2003). There are a number of problems with this request. The most obvious problem is that, as an intermediate appellate court, we must follow the binding precedent of the Court of Criminal Appeals. *See Southwick v. State,* 701 S.W.2d 927, 929 (Tex.App.-Houston [1st Dist.] 1985, no pet.).

brought about by the criminal conduct of some person. *Id.* Therefore, we must review the evidence to determine whether there is some corroboration of an injury or loss and a criminal agent, though the independent evidence does not have to identify the defendant as the culprit. *Salazar v. State,* 86 S.W.3d 640, 644 (Tex.Crim.App. 2002). The corroborating evidence need not prove the underlying offense conclusively; there simply must be some evidence which renders the commission of the offense more probable than it would be without the evidence. *Cardenas v. State,* 30 S.W.3d 384, 390 (Tex.Crim.App. 2000); *Chiles v. State,* 988 S.W.2d 411, 414 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd).

## B. Analysis

■■■ On the day she was murdered, Villatoro picked up her two daughters from day care at 4:25 in the afternoon. While she was expected to return home, she never did. The next morning, her body was found at a construction site. Though the construction site was not near the daycare or her home, this alone is not sufficient to establish the *corpus delicti* of kidnapping, because it does not suggest that she was alive when she was moved. *Gribble,* 808 S.W.2d at 72.

Appellant's brother, Andres Gonzales testified that he met appellant after 7:30 that evening, and Villatoro was dead in the car at that time. The evidence at trial showed that she was killed in the car. This means that either appellant murdered Villatoro immediately at the daycare and then drove around for three hours with a dead body and two upset children in his car, or that he transported her alive before killing her. Because of the risks created by carrying a dead body and two upset children through public streets, it is more probable that appellant transported Villa-toro alive before killing her at another location.

Next we must address whether it was more probable than not that Villatoro went with appellant against her will. The record shows that before Villatoro left appellant, he had abused her. She subsequently had him arrested for abuse. After leaving him, she did not notify appellant of her new whereabouts, and tried to prevent appellant from learning where she was. This evidence reflects Villatoro's unwillingness to have any contact with appellant. The natural inference from this is that she would not have willingly driven around for three hours with appellant without contacting her family and letting them know where she was.

We hold that a rational trier of fact could have found that there was some evidence to corroborate appellant's confession of kidnapping. Appellant's third point of error is overruled.

## Legal and Factual Sufficiency

For his first and second points of error, appellant argues that the evidence was legally and factually insufficient to support conviction. Again, appellant concedes that the evidence was sufficient to support murder. However, appellant argues that the evidence was insufficient to prove kidnapping to support the charge of capital murder.

### A. Standards of Review

A legal-sufficiency challenge requires us to determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Howley v. State,* 943 S.W.2d 152, 155 (Tex.App.-Houston [1st Dist.] 1997, no pet.). Although our analysis considers all of the evidence presented at trial, we may

not re-weigh the evidence and substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim.App.2000).

In a factual-sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim. App.2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 481 (Tex.Crim.App.2004)). Our evaluation may not intrude upon the fact-finder's role as the sole judge of the weight and credibility accorded any witness's testimony. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). The fact-finder alone determines what weight to place on contradictory testimonial evidence, as it depends on the fact-finder's evaluation of credibility and demeanor. *Id.* at 408–09. In conducting a factual-sufficiency review, we must discuss the evidence that, according to appellant, most undermines the jury's verdict. *See Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim.App.2003).

**B. Analysis**

 Appellant presents essentially the same argument for both the legal and the factual sufficiency challenges. He argues that he did not intend to kidnap Villatoro; instead, he was intended to murder her and they drove around looking for a secluded place where he could carry out this original goal. This, appellant states without citing authority, "is not an abduction per se." [2] We find appellant's argument to be flawed.

Whether a defendant intends to commit capital murder or a kidnapping is irrelevant. We look to the defendant's intent to commit the elements of a crime, not to the defendant's intent to commit the named offense. TEX. PEN.CODE ANN. § 6.02(a) (Vernon 2003). Whether appellant "simply ... moved his victim so that he could accomplish his true intent to kill the complainant" is insignificant. What matters is whether this "byproduct" of the main goal resulted in meeting the elements of the crime of kidnapping.[3] *See Santellan v. State*, 939 S.W.2d 155, 162 (Tex.Crim.App. 1997) (holding "a kidnapping becomes a completed offense when (1) a restraint is accomplished, and (2) there is evidence that the actor had the specific intent to prevent liberation by secretion or the use or threatened use of deadly force").

"A person commits the offense of kidnapping if he intentionally or knowingly abducts another person." TEX. PEN.CODE

---

**2.** Appellant also asserts, without citing authority, that the legislature did not intend for the capital murder statute to be used under facts like the present case and that "[t]he real purpose of the capital murder statute was to prevent persons from holding other persons hostage, then intentionally killing them." Courts construe a statute according to its plain textual meaning. *Logan v. State*, 89 S.W.3d 619, 627 (Tex.Crim.App.2002). We will look to extratextual sources, such as legislative history, to construe a statute only if the statute is ambiguous or if following the plain textual meaning results in absurd consequences. *Id.* Appellant fails to identify any

ambiguity in the statute, nor do we find a literal interpretation to result in absurd consequences in this case. We therefore decline any invitation to probe into the intent of the legislature in drafting the capital murder statute.

**3.** Appellant makes references to both kidnapping and aggravated kidnapping in his brief. The State did not have the burden of proving aggravated kidnapping, however. To elevate a charge of murder to capital murder, the State needs only to prove kidnapping. TEX. PEN CODE ANN § 19.03 (Vernon Supp.2005).

ANN. § 20.03 (Vernon 2003). " 'Abduct' means to restrain a person with intent to prevent his liberation by .... using or threatening to use deadly force." TEX. PEN.CODE ANN. § 20.01(2)(B) (Vernon Supp.2005). " 'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. Restraint is 'without consent' if it is accomplished by force, intimidation, or deception...." TEX. PEN.CODE ANN. § 20.01(1)(A).

In his confession to Detective Velasco, appellant admitted that he got into Villatoro's car, showed her the gun, and told her, "Start, start the car and let's go." As they drove around, she repeatedly asked him to let her go. Appellant refused and instructed her to drive to an isolated area of Katy, Texas, where he killed her. With her children in the back seat and appellant bearing a gun in the passenger seat, Villatoro was restrained from leaving the car. She asked repeatedly to be let go, showing the restraint was without consent. By bearing the gun and refusing to let Villatoro go, appellant showed an intent to restrain Villatoro by threatening to use deadly force. These actions show he acted intentionally.

We hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Appellant's first point of error is overruled.

During the trial, appellant did not present any witnesses of his own to offer contrary evidence. Appellant's confession to Detective Velasco was largely uncontradicted. Accordingly, we hold that the evidence was not too weak, nor was the contrary evidence too strong, to support a finding of proof beyond a reasonable doubt.

Appellant's second point of error is overruled.

### Hearsay

In his fifth point of error, appellant argues that the trial court erred in admitting out of court statements testified to by Villatoro's mother.

### A. Standard of Review

We review the trial court's admission of testimony under an abuse of discretion standard. *Salazar v. State,* 38 S.W.3d 141, 153 (Tex.Crim.App.2001). We will uphold the trial court's decision unless it lies outside the "zone of reasonable disagreement." *Id.* at 153–54.

### B. Analysis

Appellant complains of certain testimony from Villatoro's mother. After appellant had asked her if the children were "getting along fine," she indicated that they were. The State, on redirect, asked Villatoro's what Michelle, one of the daughters, remembered about the death of her mother. She testified that Michelle told her that she saw appellant cover Villatoro's mouth and hit her repeatedly. Michelle then formed her hand in the shape of a gun and said "boom, boom." She also recalled seeing her mother bleed a lot through her nose. Appellant argues that these statements were inadmissible hearsay. The State argues that the statements were not hearsay because they were not offered to prove the truth of the matter asserted.

Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). An extrajudicial statement or writing that is offered for the purpose of showing what was said,

rather than for proving the truth of the matter stated therein, does not constitute hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex.Crim.App.1995); *Ellis v. State*, 99 S.W.3d 783, 788 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd).

The State offered the testimony to rebut appellant's questioning whether the children were "getting along fine." For this purpose, what mattered was what Michelle said, not whether the matter asserted was true. Villatoro's mother's testimony was not hearsay, and therefore the trial court did not abuse its discretion in overruling appellant's objection.

Appellant's fifth point of error is overruled.

### Warrantless Search

In his sixth point of error, appellant argues that the trial court erred in denying his motion to suppress the gun seized as a result of an unlawful search of the trunk of his car.

### A. Standard of Review

A trial court's ruling on a motion to suppress evidence will not be set aside unless an abuse of discretion is found. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *State v. Derrow*, 981 S.W.2d 776, 778 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). In reviewing the trial court's ruling, we apply a bifurcated standard of review. *Carmouche*, 10 S.W.3d at 327. We give almost total deference to the trial court's determination of the historical facts. *Id.* The trial court is the exclusive finder of fact in a motion to suppress hearing, and it may choose to believe or disbelieve any or all of any witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). However, if the trial court is called upon to apply the law to the facts, and the ultimate resolution of the issue does not turn on an evaluation of the credibility and demeanor of a witness, we review that issue de novo. *Guzman*, 955 S.W.2d at 89.

### B. Analysis

■ While appellant was en route to Santa Barbara, California, Mesquite police impounded his car left near the bus station. While it was at the impound lot, Mesquite police received instruction from Houston police to search the trunk of the vehicle. Officer William Sipes pried the trunk open and inside it he found the gun used to kill Villatoro. At trial, the court held a hearing on whether the evidence was obtained under an unlawful search and should be suppressed. After hearing all the evidence, the trial court ruled that the search was lawful because the vehicle had been abandoned and denied the motion to suppress.

■ The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court has held that the Fourth Amendment generally imposes a warrant requirement for searches. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *see also Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). "A 'search' occurs when the government violates a subjective expectation of privacy that society considers objectively reasonable." *Dawson v. State*, 106 S.W.3d 388, 391 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing *Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 2042–43, 150 L.Ed.2d 94 (2001)). Warrantless searches are "per se unreasonable under the Fourth Amendment subject only to a few specifically estab-

lished and well-delineated exceptions." *Katz,* 389 U.S. at 357, 88 S.Ct. at 514.

■ The State argues that appellant abandoned the vehicle and, thus, lacks standing to assert Fourth Amendment rights regarding the vehicle. If a defendant abandons property, he lacks standing to raise Fourth Amendment rights over it at trial. *Swearingen v. State,* 101 S.W.3d 89, 101 (Tex.Crim.App.2003); *Barron v. State* 671 S.W.2d 553, 555–56 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd) (holding Fourth Amendment protection terminated when defendant left car unoccupied, in ditch area with two doors open).

■ When police take custody of abandoned property, no seizure occurs under the Fourth Amendment. *Swearingen,* 101 S.W.3d at 101. Property is abandoned if (1) the defendant intends to abandon the property and (2) his decision to abandon the property was not due to police misconduct. *McDuff v. State,* 939 S.W.2d 607, 616 (Tex.Crim.App.1997) (holding automobile abandoned when left in motel parking lot for six days and defendant went to another state).

Appellant does not argue that any potential police misconduct lead to his alleged abandonment of the property. Our analysis of abandonment therefore turns on whether appellant intended to abandon the property. The *McDuff* court explained as follows:

> [A]bandonment is primarily a question of intent to be inferred from the words spoken, acts done, and other objective facts and relevant circumstances, with the issue not being in the strict property-right sense, but rather whether the accused had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expecta-

tion of privacy with regard to it at the time of the search.

*Id.*

After the murder, appellant drove his car from Houston, Texas to Mesquite, Texas. He drove into a parking lot near the Greyhound bus station. He parked his car at the edge of the parking lot. He did not park in a parking space and one tire hung over a curb leading onto another parking lot. Heading to the bus station, appellant left one car door open and left items from inside the car—such as cassettes and a child safety seat—scattered near the car. At the bus station, appellant bought a one-way ticket to Santa Barbara, California.

Considering these facts in their entirety, we hold that the trial court did not abuse its discretion finding that the car had been abandoned and in overruling appellant's motion to suppress. Because appellant abandoned his car, he lacked standing to claim any Fourth Amendment rights at trial. *Swearingen,* 101 S.W.3d at 101. We hold that the trial court did not abuse its discretion in denying appellant's motion to suppress.

Appellant's sixth point of error is overruled.

## Conclusion

We affirm the judgment of the trial court.