Opinion issued August 23, 2007








 










In The

Court of Appeals

For The

First District of Texas






NOS. 01-06-00266-CR

 01-06-00267-CR






GREGORY DEWAYNE JENKINS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause Nos. 1031071 & 1031072







O P I N I O N

 A jury convicted appellant, Gregory Dewayne Jenkins, of one count of
aggravated kidnapping (1) in each appellate cause number, (2) and the court sentenced him
to 27 years' confinement on each count. In six issues, appellant argues that (1) the
evidence is legally and factually insufficient to support his conviction for aggravated
kidnapping and (2) the trial court erred when it refused to charge the jury on the lesser
included offense of unlawful restraint.

 We affirm.

FACTS

 Appellant and Nieketi Williamson first met in February 2003 and dated for five
months. After they broke up, Nieketi did not see appellant again until the early
morning hours of June 18, 2005, when appellant knocked on the door of Nieketi's
apartment and told her that he missed her. Appellant and Nieketi spoke for
approximately 20 minutes, and appellant left.

 Sometime between 6:00 a.m. and 7:00 a.m. that same morning, appellant
returned to Nieketi's apartment, kicking her door hard enough to damage its frame. 
Nieketi opened the door, and appellant walked in carrying a gun and claimed that
someone was chasing him. Nieketi asked appellant to leave because her mother,
Rosemary Williamson, (3) her two children, and her nephew were also in the apartment. 
When appellant refused to leave, Nieketi called the police. 

 While in Nieketi's apartment, appellant fired three shots. After the first shot,
Nieketi hid with the children in her closet because it "seemed like the only safe place
in the house." Rosemary, too ill to move from the couch on which she had been
sleeping, remained in the living room. While in the closet, Nieketi heard two more
gunshots. Trial testimony established that two of the shots had gone through
Nieketi's bedroom window and the third had gone through the front door.

 Soon after police had surrounded Nieketi's apartment, Deputy Z. Long arrived
and began negotiating with appellant. At one point during negotiations, appellant
said to Deputy Long that "he was not going to jail" and that if police stormed the
apartment, "[they] better come in praying and that he is going to be shooting to kill
and [police] better be shooting to kill him." Sometime between 8:00 a.m. and
9:00 a.m., appellant released the three children in exchange for three cigarettes;
according to Nieketi's son, appellant said that Nieketi and Rosemary had to stay in
the apartment.

 After approximately three hours of negotiating, Deputy Long and appellant
agreed that appellant would come out of the apartment if Deputy Long would give
him a pack of menthol cigarettes and allow him to smoke one. Appellant walked out
on to the porch with a gun at his side. Eight to 10 minutes later, appellant threw the
gun aside and walked into the parking lot with his hands at his side. Deputy Long
handcuffed him, allowed him to smoke a cigarette, and then put him in a patrol car.

 During its direct examination, when the State asked Nieketi whether she was
worried about appellant's gun, she replied, "No not really, but I am scared of guns." 
Nieketi further testified that apellant never threatened her or Rosemary, shouted at or
argued with them, or pointed his gun at them. Nieketi later testified, however, that
she did not feel that she could leave the apartment at any time because appellant said
that he would not let her or Rosemary leave and that if she could have left the
apartment with the children and Rosemary, she would have done so.

ANALYSIS

 Appellant was charged with two counts of aggravated kidnapping. A person
commits kidnapping if he intentionally or knowingly abducts another person. Tex.
Pen. Code Ann. § 20.03(a) (Vernon 2003). The Penal Code defines "abduct" as "to
restrain a person with intent to prevent his liberation by: (A) secreting or holding him
in a place where he is not likely to be found; or (B) using or threatening to use deadly
force." (4) Tex. Pen. Code Ann. § 20.01(2) (Vernon Supp. 2006). Under the Penal
Code, "restrain" means "to restrict a person's movements without consent, so as to
interfere substantially with the person's liberty, by moving the person from one place
to another or by confining the person." Id. § 20.01(1) (Vernon Supp. 2006). 
Restraint is "without consent" if it is accomplished by "force, intimidation, or
deception." Id. § 20.01(1)(A). Thus, kidnapping is a completed offense when (1) a
restraint is accomplished and (2) there is evidence that the actor had the specific
intent to prevent liberation by secretion or by the use or threatened use of deadly
force. Santellan v. State, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997); see also
Tex. Pen. Code Ann. § 20.03 (Vernon 2003). 

 The offense of kidnapping is aggravated if abduction is committed with the
specific intent to commit any of the aggravating factors enumerated in section
20.04(a) of the Penal Code, including the intent to use the victim as a shield or
hostage. See Tex. Pen. Code Ann. § 20.04(a) (Vernon 2003); Padgett v. State, 683
S.W.3d 453, 457 (Tex. App.--San Antonio 1983, no pet.). Under section 20.04 of
the Texas Penal Code, a person commits aggravated kidnapping "if he intentionally
or knowingly abducts another person with the intent to . . . use him as a shield or
hostage" (5) or "if he intentionally or knowingly abducts another person and uses or
exhibits a deadly weapon during the commission of the offense." (6) 

 The indictment in cause number 1031071 charged appellant with "intentionally
and knowingly abduct[ing] Nieketi Williamson . . . without his [sic] consent, with
intent to prevent his [sic] liberation by using and threatening to use deadly force
namely, a firearm on [Nieketi] and with intent to use [Nieketi] as a hostage." In cause
number 1031072, the indictment charged appellant with "intentionally and knowingly
abduct[ing] Rosemary Williamson . . . without his [sic] consent, with intent to prevent
his [sic] liberation by using and threatening to use deadly force namely, a firearm, on
[Rosemary] and with intent to use [Rosemary] as a hostage." Thus, the State was
required to prove with regard to each complainant that appellant (1) intentionally and
knowingly restricted the complainant's movement without her consent such that he
substantially interfered with her liberty (2) with the intent (a) to prevent her liberation
through the use and threatened use of a firearm on her and (b) to use her as a hostage.

Sufficiency of the Evidence

 When an appellant challenges both the legal and factual sufficiency of the
evidence, we must first determine whether the evidence was legally sufficient to
support the verdict. Harmond v. State, 960 S.W.2d 404, 406 (Tex. App.--Houston
[1st Dist.] 1998, no pet.).


 Legal Sufficiency

 In his first and second points of error, appellant argues that the evidence is
legally insufficient to prove that he restrained Nieketi and Rosemary and that he
intended to use Nieketi and Rosemary as hostages.

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis considers all the
evidence presented at trial, we may not re-weigh the evidence and substitute our
judgment for that of the fact finder. King, 29 S.W.3d at 562.

Restraint by Use or Threatened Use of Deadly Force 

 Appellant argues that the evidence is legally insufficient to prove that he
restrained Nieketi and Rosemary by using or threatening to use deadly force.

 This court's opinion in Gonzales v. State, 190 S.W.3d 125 (Tex.
App.--Houston [1st Dist.] 2005, pet. ref'd), cert. denied, 127 S. Ct. 504 (2006), is
instructive. In Gonzales, the appellant forced himself into his ex-wife's car after she
had picked up their two daughters from daycare, showed her a handgun, and told her
to drive. Id. at 128. The appellant spent between two and three hours in the car with
his ex-wife and daughters, arguing with her and telling her where to drive. Id. 
Eventually, the appellant led his ex-wife to a remote area of Katy, Texas where he
shot and killed her. Id. The appellant fled to California, but was later arrested and
convicted of capital murder for the kidnapping and murder of his ex-wife. Id. at 128,
129. On appeal, the appellant argued that the evidence was legally and factually
insufficient to prove kidnapping to support the capital murder conviction. Id. at 131. 
This court affirmed the appellant's conviction, stating:

 With her children in the back seat and [the] appellant bearing a gun in
the passenger seat, [the appellant's ex-wife] was restrained from leaving
the car. She asked repeatedly to be let go, showing the restraint was
without consent. By bearing the gun and refusing to let [his ex-wife] go,
[the] appellant showed an intent to restrain [his ex-wife] by threatening
to use deadly force.


Id. at 133.

 Like the appellant in Gonzales, appellant forced himself into Nieketi's
apartment and brandished a gun. Nieketi asked appellant to leave, but he refused. 
While in the apartment, appellant fired his gun three times and refused to let Nieketi
and Rosemary leave the apartment, even though he allowed the children to leave. By
bearing and firing his gun in the apartment and refusing to let Nieketi and Rosemary
leave, appellant restrained both Nieketi and Rosemary by threatening deadly force. 
See id.; see also Tex. Pen. Code Ann. § 20.01(2)(B).

 Based on the foregoing, we conclude that the evidence is legally sufficient to
prove that appellant restrained both Nieketi and Rosemary by threatening deadly
force. See Wesbrook, 29 S.W.3d at 111; King, 29 S.W.3d at 562. 

Hostage

 Appellant argues that the evidence is legally insufficient to prove that he
intended to use Nieketi and Rosemary as hostages because there is no evidence to
show that he threatened to harm Nieketi and Rosemary as required under the
definition of a hostage.

 The Texas kidnapping statute does not define the word "hostage." See Tex.
Pen. Code Ann. § 20.01 (Vernon Supp. 2006) (definitions section). In his brief,
appellant utilizes the definition of "hostage" as it appears in Black's Law Dictionary:
"An innocent person held captive by another who threatens to kill or harm that person
if one or more demands are not met." See Black's Law Dictionary 742 (7th ed.
1999). We can find no reported Texas case that addresses the meaning of the term
"hostage" in a kidnapping context and, therefore, no Texas case that adopts this
definition. (7) Several cases from other states have addressed this issue, however. In
Crump v. State, the New Mexico Supreme Court cited several dictionary definitions,
all of which defined "hostage" within the context of international warfare. See 484
P.2d 329, 334 (N.M. 1971). From these definitions, the court concluded that the term,
as used in New Mexico's kidnapping statute, "implie[d] the unlawful taking,
restraining or confining of a person with the intent that the person, or victim, be held
as security for the performance, or forbearance, of some act by a third person." Id.
at 334-35. Several other states, in interpreting the word "hostage" in their own
kidnapping statutes, have adopted Crump's definition. See Mobley v. State, 409 So.
2d 1031, 1036 n.11 (Fla. 1982); State v. Littlefield, 389 A.2d 16, 20-21 (Me. 1978);
State v. Lee, 234 S.E.2d 482, 484 (N.C. Ct. App. 1977).

 The kidnapping statutes at issue in Mobley, Littlefield, and Lee use the term
"hostage" in a manner similar to its use in the Texas aggravated kidnapping statute
at issue here. In Texas, a person commits aggravated kidnapping when he knowingly
or intentionally abducts another person with the intent to commit any of the
aggravating factors enumerated in section 20.04(a), including the intent to use the
victim as a shield or hostage. See Tex. Pen. Code Ann. § 20.04(a); Padgett, 683
S.W.3d at 457. At the time of the Mobley decision, Florida's kidnapping statute read,
in part:


 (1)"Kidnapping" means forcibly, secretly, or by threat confining,
abducting, or imprisoning another person against his will and
without lawful authority, with intent to:


 


 
 Hold for ransom or reward or as a shield or hostage.

 


Law of June 9, 1977, ch. 77-174, § 1, 1977 Fla. Laws 719, 886. The Maine
kidnapping statute at issue in Littlefield read, in part: 



 A person is guilty of kidnapping if . . . :
 
 He knowingly restrains another person with the intent to
 
 hold him for ransom or reward;
 use him as a shield or hostage.
 
 


Law of March 1, 1976, ch. 499, § 301, 1975 Me. Laws 1273, 1300. Similarly, at the
time of the Lee decision, North Carolina's kidnapping statute read, in part: 


 Any person who shall unlawfully confine, restrain, or remove
from one place to another, any other person . . . shall be guilty of
kidnapping if such confinement, restraint or removal is for the
purpose of:


 


 
 Holding such other person for ransom or as a hostage or
using such other person as a shield.

 


Law of June 25, 1975, ch. 843, § 1, 1975 N.C. Sess. Laws 1198, 1198.

 Two other states have adopted definitions that are similar to the Crump
definition. See State v. Stone, 594 P.2d 558, 563 (Ariz. Ct. App. 1979) ("[T]he term
'hostage' . . . implies the holding or detaining of a person as security for the
performance, or the forbearance, of some act by a third person."); Ingle v. State, 746
N.E.2d 927, 939 (Ind. 2001) ("[T]he term 'hostage' . . . refers to a person who is held
as security for the performance or forbearance of some act by a third party."). The
kidnapping statutes at issue in Stone and Ingle also use the word "hostage" similarly
to the Texas aggravated kidnapping statute. The Arizona kidnapping statute at issue
in Stone read, in part, "A person . . . who seizes, confines, inveigles, entices, decoys,
abducts, conceals, kidnaps or carries away any individual by any means whatsoever
with intent to hold or detain, or who holds or detains any individual for ransom,
reward, pecuniary benefit, OR OTHERWISE, or as a shield or hostage . . . is guilty
of a felony." Law of May 8, 1974, ch. 110, § 1, 1974 Ariz. Sess. Laws 346, 346. At
the time of the Ingle decision, Indiana's kidnapping statute read, in part:


 A person who knowingly or intentionally confines another
person:


 

 . . . .

 


 
 with intent to use the person confined as a shield or
hostage;
 


 

 commits kidnapping, a class A felony.



 A person who knowingly or intentionally removes another
person, by fraud, enticement, force, or threat of force, from one
place to another:


 

 . . . .



 
 with intent to use the person removed as a shield or
hostage;
 


 

 commits kidnapping, a class A felony.


Ind. Code § 35-42-3-2 (2004).

 Based on the foregoing, we decline to adopt the definition of "hostage" urged
by appellant and adopt the definition of "hostage" as articulated by the New Mexico
Supreme Court in Crump. Thus, we hold that the term "hostage," as used in section
20.04 of the Texas Penal Code means "the unlawful taking, restraining or confining
of a person with the intent that the person, or victim, be held as security for the
performance, or forbearance, of some act by a third person." See Crump, 484 P.2d
at 334-35.

 Appellant argues that the evidence is legally insufficient to prove that he
intended to use Nieketi and Rosemary as hostages because there is no evidence to
show that he threatened to harm Nieketi and Rosemary as required under the
definition of a hostage. Under the definition that we have adopted here, however, the
State was not required to prove that appellant threatened to harm Nieketi and
Rosemary.

 We overrule appellant's first and second points of error.

 Factual Sufficiency

 In his third and fourth points of error, appellant argues that the evidence is
factually insufficient to prove that he restrained Nieketi and Rosemary and that he
intended to use Nieketi and Rosemary as hostages.

 We begin the factual sufficiency review with the presumption that the evidence
supporting the jury's verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light, (8) and we
will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 10-11 (Tex. Crim.
App. 2000). Regarding the second basis for a finding of factual insufficiency, "an
appellate court must . . . be able to say, with some objective basis in the record, that
the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury's verdict before [the court] is justified in exercising its appellate
fact jurisdiction to order a new trial." Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006) (emphasis omitted). For a review of factual sufficiency, we must
consider the most important evidence that the appellant claims undermines the
verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Restraint by Use or Threatened Use of Deadly Force

 Appellant argues that the evidence is factually insufficient to prove that he
restrained Nieketi and Rosemary by using or threatening to use deadly force. In
support of this argument, appellant cites Gaffney v. State, in which the Texarkana
Court of Appeals held that the evidence was factually insufficient to support the
appellant's conviction for aggravated kidnapping. See 940 S.W.2d 682, 686 (Tex.
App.--Texarkana 1996, pet. ref'd). In Gaffney, the complainant testified that he felt
restricted in his freedom and movements because of Gaffney's representation that he
had a Glock pistol and was going to "Glock someone." Id. at 685. However, Gaffney
did not volunteer that he had a pistol but only admitted this fact after being
questioned by the complainant; the complainant had willingly allowed Gaffney to get
into his car to take him to get gas for Gaffney's car; while in the complainant's car,
Gaffney asked him to do various things but never ordered the complainant to stay at
or go to a particular place; Gaffney told the complainant that he could go home at any
time; and the complainant admitted that he was not prohibited from talking to other
people and that he could have driven off on several occasions. Id. at 683-85. Here,
Nieketi let appellant into her apartment only after he damaged her front door trying
to kick it in. Moreover, unlike the appellant in Gaffney, appellant brandished a gun
and fired three shots while in the apartment, told Nieketi and Rosemary that, although
the children could leave, they had to stay, and he threatened to shoot should the police
try to storm the apartment.

 Thus, after neutrally examining all the evidence, we find that the evidence
supporting the finding that appellant restrained both Nieketi and Rosemary by
threatening deadly force is not so weak that the verdict is clearly wrong or manifestly
unjust; nor is the verdict against the great weight and preponderance of the evidence. 
See Johnson, 23 S.W.3d at 10-11.

Hostage

 Appellant contends that the evidence is factually insufficient to prove that he
intended to use Nieketi and Rosemary as hostages because there is no evidence to
show that he threatened to harm Nieketi and Rosemary as required under the
definition of a hostage. Under the definition that we have adopted here, however, the
State was not required to prove that appellant threatened to harm Nieketi and
Rosemary. It is sufficient that appellant unlawfully restrained Nieketi and Rosemary
by confining them without their consent and holding them as security against any
attempt by the police to storm the apartment to liberate them or to seize appellant.

 We overrule appellant's third and fourth points of error.

Lesser Included Offense

 In his fifth and sixth points of error, appellant contends that the trial court erred
when it refused to charge the jury on the lesser included offense of unlawful restraint. 
 A jury must be charged on a lesser included offense if (1) the lesser included
offense is included within the proof necessary to establish the charged offense and
(2) some evidence exists in the record that would permit a rational jury to find that
if the defendant is guilty, he is guilty only of the lesser offense. Rousseau v. State,
855 S.W.2d 666, 672 (Tex. Crim. App. 1993); Robinson v. State, 174 S.W.3d 320,
333 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd). Thus, there must be some
evidence that would negate the element raising the lesser included offense to the
greater charged offense. Aguilar v. State, 682 S.W.2d 556, 558 (Tex. Crim. App.
1985); Robinson, 174 S.W.3d at 333.

 Unlawful restraint is a lesser-included offense of aggravated kidnapping. 
Anderson v. State, 125 S.W.3d 729, 731 (Tex. App.--Texarkana 2003, no pet.) (citing
Schweinle v. State, 915 S.W.2d 17, 19 (Tex. Crim. App.1996)). (9) Accordingly, the
first prong of the test is satisfied. See Rousseau, 855 S.W.2d at 672; Robinson, 174
S.W.3d at 333. The next question is whether some evidence exists in the record that
would permit a rational jury to find that if appellant is guilty, he is guilty only of
unlawful restraint. See Rousseau, 855 S.W.2d at 672; Robinson, 174 S.W.3d at 333.

 A person commits unlawful restraint "if he intentionally or knowingly restrains
another person." Tex. Pen. Code Ann. § 20.02 (Vernon 2003). A person commits
aggravated kidnapping "if he intentionally or knowingly abducts another person with
the intent to . . . use him as a shield or hostage" (10) or "if he intentionally or knowingly
abducts another person and uses or exhibits a deadly weapon during the commission
of the offense." (11) The Penal Code defines "abduct" as "to restrain a person with
intent to prevent his liberation by: (A) secreting or holding him in a place where he
is not likely to be found; or (B) using or threatening to use deadly force." Tex. Pen.
Code Ann. § 20.01(2). Abduction is different from restraint because it adds to
"restraint" the intent to prevent liberation. Curry v. State, 30 S.W.3d 394, 403 (Tex.
Crim. App. 2000). Without this accompanying mental state, there is no abduction,
only restraint. Id. Thus, in order for appellant to have been entitled to an instruction
on the lesser offense of unlawful restraint, the record must contain some evidence that
negates the jury's finding that appellant intended to prevent the liberation of Nieketi
and Rosemary. See Aguilar, 682 S.W.2d at 558; Robinson, 174 S.W.3d at 333.

 Appellant points to no evidence in the record that could undermine this finding;
nor have we found any. Rather, appellant's refusal to allow Nieketi and Rosemary
to leave the apartment with the children and his statements to Deputy Long that "he
was not going to jail" and that if police stormed the apartment, he would be "shooting
to kill" is evidence of appellant's intent to prevent Nieketi's and Rosemary's
liberation. See Curry, 30 S.W.3d at 403. Therefore, the trial court did not err when
it refused to instruct the jury on the lesser included offense of unlawful restraint.

 We overrule appellant's fifth and sixth points of error.







CONCLUSION

 We affirm the judgment of the trial court.

 


 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.

Publish. Tex. R. App. P. 47.2(b).
1. Tex. Pen. Code. Ann. § 20.04 (Vernon 2003).
2. Trial court cause number 1031071 corresponds with appellate court cause number 01-06-00266-CR. Trial court cause number 1031072 corresponds with appellate court cause
number 01-06-00267-CR.
3. Because Rosemary Williamson died on August 7, 2005, she did not testify at appellant's
March 2006 trial.
4. The trial court charged the jury only on the second manner of abduction, restraining a
person with intent to prevent his liberation by using or threatening to use deadly force.
5. Tex. Pen. Code Ann. § 20.04(a) (Vernon 2003).
6. Id. § 20.04(b) (Vernon 2003).
7. In an unreported 2000 decision, the Austin Court of Appeals defined a hostage as "[a]n
innocent person held captive by one who threatens to kill or harm him if demands are not
met" in determining whether evidence that the appellant had said that he had a gun because
he was going to take his fifth-grade class hostage involved making a threat of violence
toward his classmates. See In the Matter of L.J.G., No. 03-99-00412-CV, 2000 WL 963163,
at *7 (Tex. App.--Austin, July 13, 2000, no pet.) (not designated for publication) (emphasis
omitted).
8. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).
9. In its 1996 Schweinle opinion, the Court of Criminal Appeals held that "false imprisonment
is a lesser-included offense of kidnapping and aggravated kidnapping." Schweinle v. State,
915 S.W.2d 17, 19 (Tex. Crim. App. 1996). In 1997, the Legislature renamed the crime of
"false imprisonment"; it is now called "unlawful restraint." Substantively, the former "false
imprisonment" and the current "unlawful restraint" statutes are identical. Compare Act of
May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 20.02, 1993 Tex. Gen. Laws 3586, 3615,
with Tex. Pen. Code Ann. § 20.02 (Vernon 2003).
10. Tex. Pen. Code Ann. § 20.04(a).
11. Id. § 20.04(b).