

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NOS. 02-09-00375-CR
## 02-09-00376-CR
## 02-09-00377-CR
## 02-09-00378-CR

JOHN ALLEN
CROSTHWAIT

APPELLANT

V.

THE STATE OF TEXAS

STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two points, Appellant John Allen Crosthwait appeals his convictions and

punishment for possession of child pornography and possession with intent to

---

[1]See Tex. R. App. P. 47.4.

promote child pornography.  *See* Tex. Penal Code Ann. § 43.26(a), (e) (Vernon 2003).  We affirm.

## II.  Factual and Procedural History

A tip from America Online (AOL) to the National Center for Missing and Exploited Children about an image of child pornography being transmitted from a Texas-based AOL account eventually led to a jury finding Crosthwait guilty of three counts of possession of child pornography and five counts of possession of child pornography with intent to distribute.[2]  The jury assessed punishment at ten years' confinement for each possession conviction and twenty years' confinement for each possession-with-intent-to-distribute conviction.  The trial court sentenced him accordingly, setting the ten-year sentences to run concurrently with each other but consecutively to the twenty-year sentences, which run concurrently with each other.  This appeal followed.

## III.  Challenge to Facial Unconstitutionality

In his first point, Crosthwait argues that penal code section 43.26 is facially unconstitutional because it is vague and overbroad, constituting a violation of the First Amendment.  However, he acknowledges that he did not challenge the facial constitutionality of the child pornography statute at trial.  Contending that the court of criminal appeals's statement in *Karenev v. State*, that "a defendant

---

[2]Because Crosthwait complains that improper extraneous offense evidence admitted during the punishment phase of the trial had a substantial and injurious effect or influence on the jury's verdict, we will review the record in greater detail below as part of our analysis.

may not raise for the first time on appeal a facial challenge to the constitutionality of a statute," is dicta, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009), he claims that he may now raise this challenge for the first time on appeal. *See id*.

We disagree. In *Karenev*, the majority expressly addressed the question of "whether a facial challenge to the constitutionality of the harassment statute may be raised for the first time on appeal" and expressly answered the question, "We hold that it may not." *Id.* at 429. And in a more recent case, the court cited to *Karenev* for this proposition. *See, e.g., Estrada v. State*, 313 S.W.3d 274, 306 (Tex. Crim. App. 2010) (citing *Karenev* for the proposition that "defendant may not raise for first time on appeal a facial challenge to constitutionality of a statute" and re-emphasizing rule by observing that Estrada failed to preserve his facial constitutional challenges for review). Because we are bound by court of criminal appeals precedent, we conclude that Crosthwait failed to preserve his first point for our review. *See* Tex. R. App. P. 33.1; *State v. Stevenson*, 993 S.W.2d 857, 867 (Tex. App.—Fort Worth 1999, no pet.) ("Because a decision of the court of criminal appeals is binding precedent, we are compelled to comply with its dictates."); *see also Gonzales v. State*, 190 S.W.3d 125, 130 n.1 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("[A]s an intermediate appellate court, we must follow the binding precedent of the Court of Criminal Appeals."), *cert. denied*, 549 U.S. 1000 (2006). We overrule Crosthwait's first point.

3

## IV. Punishment Evidence

In his second point, Crosthwait complains that the trial court abused its discretion by admitting evidence depicting bestiality during the punishment phase of his trial because the degree of unfair prejudice of the evidence substantially outweighed its probative value. Crosthwait argues that the bestiality evidence had no probative value, that it was inflammatory and inherently prejudicial, that it served to distract the jurors from the proper issue—punishment for his child pornography-related convictions—and that presenting evidence on actions unrelated to the charged offense was a waste of time. *See* Tex. R. Evid. 403.

Even if the trial court abused its discretion by admitting the bestiality images, which we do not hold,[3] we hold that error, if any, was harmless.

---

[3]Section 3(a)(1) of article 37.07 of the code of criminal procedure permits evidence to be offered during the punishment phase

> as to any matter the court deems relevant to sentencing including but not limited to . . . the circumstances of the offense for which [defendant] is being tried, and . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010). A person commits an offense if, knowing its content and character, he promotes or possesses with intent to promote any obscene material. Tex. Penal Code Ann. § 43.23(c)(1) (Vernon Supp. 2010). "Obscene" means material that depicts patently offensive representations of ultimate sexual acts, including sexual bestiality. *Id.* § 43.21(a)(1)(B)(i) (Vernon 2003).

4

In assessing harm for an evidentiary error, we review whether the error could have affected Crosthwait's substantial rights. *See* Tex. R. App. P. 44.2(b); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall v. State*, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref'd). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon*, 49 S.W.3d at 365; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

## A. Voir Dire and Guilt-Innocence Phase Opening Statements and Evidence

There was no mention of bestiality during voir dire or either side's opening statements. Rather, the State focused on what it referred to as Crosthwait's

5

"dirty little secrets," focusing exclusively on child pornography, and the defense encouraged the jury to "[k]eep your eye on what the State doesn't know."

Dallas Police Detective Gregory Dugger testified that he received a tip, originating with AOL, about transmission of an image of child pornography. He executed a search warrant with AOL for its records, viewed the images, determined that they depicted a child under the age of eighteen, and determined that the transmitting account belonged to John Crosthwait, 431 East Lamar Boulevard, Arlington, Texas. The billing address of the phone number associated with the account, 817-303-5159, was "John Crosthwait, 431 E. Lamar Blvd Apt 101, Arlington TX"; the service address was "Kat Smokey, 431 E. Lamar Blvd Apt 101, Arlington TX."

State's Exhibits 1A, 1B, 1C, and 1D, containing excerpts of AOL records[4] and the images at issue, were admitted in evidence and published to the jury during Detective Dugger's testimony, as was State's Exhibit 2, Southwestern Bell's records for Crosthwait's account. Detective Dugger described the images of children who appeared to be under the age of eighteen: one contained two

---

[4]Crosthwait had the following screen name subaccounts associated with his main AOL account: Crosthwait, LostNtheBranches, KScookiemonster, TXCaveCrawler, DaRIA186, Marianneupstairs, Crusader78852, Houstonboundvet, BoredNaomi, Poiu5432, Doodlebug85586, Nfe4sAkPo9, KaNsAsCiTy1993, Daniel24Johnson, and Mudsucker87. The image attachment in State's Exhibit 1B was sent from the KScookiemonster account to another AOL user, crazydancer2006, as were the images in State's Exhibits 1C and 1D. AOL terminated Crosthwait's account based on the transmission of child pornography.

6

girls engaged in the lewd exhibition of their genitals and four more contained lewd exhibitions of a child's or children's genitals. The file name of the image associated with State's Exhibit 1B was YN-023.jpg. State's Exhibit 1C contained file names YN-003.jpg, YN-004.jpg, and YN-006.jpg. State's Exhibit 1D contained file name YN-021.jpg.[5] Detective Dugger cross-referenced the Southwestern Bell phone records, which showed that on December 9, 2007, the phone line was used for three hours, starting at 10:29 p.m., with the AOL records, which showed that KScookiemonster was logged in to AOL using phone number 817-303-5159 during that time and that this was also when the emails in State's Exhibits 1B, 1C, and 1D were sent.

Arlington Police Detective Huey Nguyen, a certified computer forensic examiner, testified that he received the file from Detective Dugger, confirmed Crosthwait's address and phone number, and then acquired and executed a search warrant for Crosthwait's apartment. Upon entering Crosthwait's apartment, he saw a laptop computer in the living room, surrounded by numerous pieces of digital media—floppy disks, CDs, DVDs. Crosthwait told the police that the laptop was his, that he had a dial-up internet connection, and that he lived alone. When asked about his subaccount names, Crosthwait admitted to his main account and to LostNtheBranches, his genealogy account, but not the

---

[5]These are the file names associated with Crosthwait's indictments for possession of child pornography with intent to promote by dissemination.

7

others.  The police seized Crosthwait's laptop, external floppy drive, and floppy disks, which were entered in evidence.

Detective Nguyen analyzed the computer hard drive and found the AOL emails, admitted as State's Exhibits 12, 13, and 14.[6]  He testified that emailing out images of child pornography is a way of promoting child pornography by dissemination, and he concluded, from finding the images in the AOL area of the computer, that the images were stored in and sent from that computer.  He found additional images of child pornography on the computer, stored under the user profile of "Owner/P folder; subfolder, lesbians," which were admitted as State's Exhibit 15 and published to the jury.[7]  Other subfolders in Crosthwait's laptop's P folder were named "animal," "nude," and "clothed."  This is the first mention of the "animal" subfolder.

---

[6]Detective Nguyen explained that the exhibits were from the computer's hard drive file path, which showed

> within the latest installation of AOL, . . . in the backup under the screen name personal file cabinet or the folder for the screen name, there's a deleted message stored there.  That deleted message was sent from KScookiemonster to crazydancer2006 on the date of 12-9-2007.

The recovered emails contained the attachments of the images at issue in this case.

[7]Detective Nguyen testified that State's Exhibit 15 depicted underage females engaged in sexual acts:  one image depicted a child engaging in masturbation and one showed two girls kissing.  He also found personal images of Crosthwait in the owner profile.

With regard to the floppy disks, Detective Nguyen testified that State's Exhibit 16, file 6.bmp, contained what appeared to be a child under the age of eighteen and the lewd exhibition of the child's breast below the top of the areolae. This file appeared on the laptop around five times.

Crosthwait went to the Arlington police station for an interview on May 29, 2008, which was videotaped and published to the jury as State's Exhibit 18. In the video, Crosthwait confirmed his address, expressed that he did not know what was going on, and repeatedly denied any knowledge of KScookiemonster, stating "It's not mine." He stated that the only "graphic content" he could remember was a video someone sent him called "The Camel Toe Song." He asked several times to see the images recovered from his emails and from the laptop, and he asserted several times that none of the images on the laptop, to his knowledge, involved anyone under age eighteen. He stated that if they were younger than eighteen, he was sorry, but he did not look at them much and they did not appear younger than co-eds to him. And he stated that a stranger gave him a compact disk of photos (a "party disk") when he lived in Austin, around eight years ago. After the police left the interview room, Crosthwait stated, "What a mess. Kansas City Cookiemonster, geez. . . . It ain't mine. . . . I don't know who that is. Who the fuck is creating these screen names and shit. Damn it, damn it, damn it . . . It's causing me a lot of headaches."

In the video, Crosthwait said he was burglarized three times in a year, explaining that this was why he had the laptop for only a few months, and he

9

theorized that he must have been hacked—that someone probably obtained his password and created the subaccounts.  However, as the video showed, and as Detective Nguyen testified, Crosthwait was unable to point to anything realistic that would show his computer had been hacked, based, among other things, on the type of internet connection he had.  Specifically, Detective Nguyen testified that it is almost impossible to hack a dial-up modem,[8] and he did not find anything in the AOL records to show that Crosthwait had ever made a complaint about hacking.

State's Exhibit 19 shows Crosthwait's AOL screen, with some of Crosthwait's different user names:  Crosthwait, LostNtheBranches, and KScookiemonster.  Additionally, the "buddy list" in the main Crosthwait account matched the "buddy list" in the KScookiemonster subaccount.[9]  Detective Nguyen testified that emailing child pornography is called collecting or trading.  State's Exhibit 21, an AOL record of an email from KScookiemonster to crazydancer2006 on December 9, 2007, states, "it's a trade.  don't know her.  im

---

[8]Detective Nguyen explained,

> To be hacked, you have to have some kind of connection to the computer before you can have a connection coming out.  So if dial-up is his only connection to the Internet, there's no way that any kind of hacker would have accessibility to that computer until it was dialed up and some sort of connection.  Also the numbers for going out on dial-up all return to Mr. Crosthwait, the 817-303-5159 number.

[9]Crosthwait's "buddies" included Xxxhottie138, Ohellzbellz, and Chavezfour.

10

[sic] sorry,usually i do first.  very pretty."  This email was sent around the same time as the child pornography emails.

## B.  Closing Arguments—Guilt-Innocence Phase

During closing arguments, the State argued that the evidence showed that Crosthwait possessed and promoted child pornography via email, stating, "[I]t's not this defendant's dirty little secret anymore because we all know about it." Defense responded that there was no direct evidence that he was the only person who ever had control over the computer, that there was no evidence that he knew some of the images were of children, and that the police did a bad job of investigating.

## C.  Punishment Phase Evidence

After the jury found Crosthwait guilty on all counts, Detective Nguyen testified during the punishment phase about the additional images that he found on Crosthwait's laptop and in Crosthwait's apartment:  images from the subfolder "lesbians," which were admitted as State's Exhibit 22; additional images found on the floppy disk that contained child pornography, admitted as State's Exhibit 23; "child erotica" in the form of clothed images of children, from the P folder on Crosthwait's laptop, in the subfolder labeled "clothed," admitted as State's Exhibit 24; various VHS cassettes and DVDs with names that referred to underage or teen participants, including "Bald Beavers," "My First Sex," "Amateur Lesbians," "Barely Learning," and "Learning to Lick"; and additional images of child

pornography recovered from AOL's records of email sent from the KScookiemonster subaccount.

Detective Nguyen then testified that he found "pornographic images involving what you would call bestiality, humans having sexual intercourse with animals," in folder P, subfolder "animals." These images were admitted as State's Exhibit 25 over Crosthwait's objections. This was the only mention of the bestiality images, and it was followed by additional testimony by Detective Nguyen that he recovered approximately 300 images of child pornography on Crosthwait's laptop and found around 176 images of adult pornography on the laptop.

Detective Nguyen further testified about deleted emails recovered from Crosthwait's laptop from Crosthwait's KScookiemonster, KaNsAsCiTy1993, and Nfe4sAkPo9 accounts. These emails were admitted as State's Exhibit 37. They were sent to or received from Xxxhottie138, Ohellzbellz, and others on Crosthwait's buddy list. All of these emails had attachments. Message 128, received by Crosthwait from Ohellzbellz, included the message "Here's a little taste of my step-daughter . . . ." Message 196, sent by Crosthwait to xxxhottie138, asked, "How young you got?" And Message 341, sent by Crosthwait to Chavezfour, stated, "She's an adult, but cute."

Crosthwait testified that, with regard to his possession of the child pornography images, "Some of the stuff was off the party disk, I don't remember all of them. The rest were from people who wanted to trade with me, and I guess

12

it just snowballed." He stated that he thought the people who sent him pictures were his friends, that he did not have a lot of friends, and that he had never met any of the people who sent the images to him in "real life."[10] He stated that he had never been with any of the children in real life and that he did not and would not take any of the pictures of children.

Crosthwait admitted on cross-examination that KScookiemonster and the other subaccounts were his. He stated that he did not think, at the time, that the photographs were of children but acknowledged that some of the photographs contained individuals that were definitely underage. On cross-examination, Crosthwait gave the following testimony:

Q. So you were actively seeking images of child pornography over the Internet; isn't that right?

A. No. What I prefer are coeds.

Q. What you collected was children; isn't that true?

A. Some of them are evidently, yes, and I'm deeply sorry.

Q. 300 images, correct?

A. If he's right, yes.

Q. Sir, are you aware of the fact that someone is taking those pictures somewhere in the world?

A. I guess they are, yes, okay.

---

[10]In addition to his testimony during the punishment phase, Crosthwait brought his former leasing agent to testify that Crosthwait had been a good resident and did volunteer work and a Tarrant County probation officer to testify about how community supervision would work.

Q.  Are you aware that real little children, real little children are being harmed by that?

A.  I've never thought about that.

## D.  Closing Arguments—Punishment Phase

During closing arguments, the State argued that Crosthwait was only sorry that he had been caught, that 300 images of child pornography warranted the maximum for each conviction, and that Crosthwait was not a good candidate for community supervision.  Defense responded that Crosthwait was an excellent candidate for community supervision, that some of the images were not children, that Crosthwait was just the end-user, and that just because he was sorry that he was caught did not also mean that he was not sorry that he did it.  The jury assessed the maximum punishment for each conviction.

## E.  Analysis

Given the volume of child pornography-related evidence considered by the jury in this case and the lack of emphasis that the State placed on the bestiality images from Crosthwait's laptop, we cannot say that the error, if any, had a substantial and injurious effect or influence in determining the jury's verdict.  *See King*, 953 S.W.2d at 271; *Coggeshall*, 961 S.W.2d at 643.  That is, the evidence during guilt-innocence overwhelmingly supported the jury's determination that Crosthwait possessed and promoted child pornography.  Because Crosthwait testified during the punishment phase, the jury had the opportunity to directly judge his credibility, his admission that the subaccounts at issue were his, and

14

his excuses for his behavior. And by the time the single exhibit containing the bestiality images was admitted, the jury had already been forced to endure a significantly greater amount of child pornography images throughout the guilt-innocence phase and during the punishment phase. *See Motilla*, 78 S.W.3d at 355.

Furthermore, the trial court included an extraneous offense instruction in the punishment charge, ordering the jury that it could not consider extraneous offense testimony for any purpose unless it found and believed "beyond a reasonable doubt that the defendant committed such other acts." And the State's overall theory (Crosthwait had "dirty little secrets" and was not a good candidate for community supervision) did not address the bestiality images. Finally, the State did not mention their presence in its closing arguments. *See id.* at 355–56. Therefore, we conclude that, on these facts, Crosthwait's substantial rights could not have been violated, and we overrule his second point.

## V. Conclusion

Having overruled both of Crosthwait's points, we affirm the trial court's judgments.

PER CURIAM

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 16, 2010

15