**Gregory Dewayne JENKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–06–00266–CR, 01–06–00267–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 23, 2007.

Discretionary Review Refused Jan. 23, 2008.

years to life in prison or 99 years. *See* TEX. PEN.CODE ANN. § 12.42 (Vernon Supp.2006).

Allen C. Isbell, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Jessica A. Caird, Assistant District Attorney, Houston, TX, for State.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

1. Tex. Pen.Code. Ann. § 20.04 (Vernon 2003).

2. Trial court cause number 1031071 corresponds with appellate court cause number 01–06–00266–CR. Trial court cause number 1031072 corresponds with appellate court cause number 01–06–00267–CR.

## OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Gregory Dewayne Jenkins, of one count of aggravated kidnapping [1] in each appellate cause number,[2] and the court sentenced him to 27 years' confinement on each count. In six issues, appellant argues that (1) the evidence is legally and factually insufficient to support his conviction for aggravated kidnapping and (2) the trial court erred when it refused to charge the jury on the lesser included offense of unlawful restraint.

We affirm.

## FACTS

Appellant and Nieketi Williamson first met in February 2003 and dated for five months. After they broke up, Nieketi did not see appellant again until the early morning hours of June 18, 2005, when appellant knocked on the door of Nieketi's apartment and told her that he missed her. Appellant and Nieketi spoke for approximately 20 minutes, and appellant left.

Sometime between 6:00 a.m. and 7:00 a.m. that same morning, appellant returned to Nieketi's apartment, kicking her door hard enough to damage its frame. Nieketi opened the door, and appellant walked in carrying a gun and claimed that someone was chasing him. Nieketi asked appellant to leave because her mother, Rosemary Williamson,[3] her two children, and her nephew were also in the apartment. When appellant refused to leave, Nieketi called the police.

3. Because Rosemary Williamson died on August 7, 2005, she did not testify at appellant's March 2006 trial.

While in Nieketi's apartment, appellant fired three shots. After the first shot, Nieketi hid with the children in her closet because it "seemed like the only safe place in the house." Rosemary, too ill to move from the couch on which she had been sleeping, remained in the living room. While in the closet, Nieketi heard two more gunshots. Trial testimony established that two of the shots had gone through Nieketi's bedroom window and the third had gone through the front door.

Soon after police had surrounded Nieketi's apartment, Deputy Z. Long arrived and began negotiating with appellant. At one point during negotiations, appellant said to Deputy Long that "he was not going to jail" and that if police stormed the apartment, "[they] better come in praying and that he is going to be shooting to kill and [police] better be shooting to kill him." Sometime between 8:00 a.m. and 9:00 a.m., appellant released the three children in exchange for three cigarettes; according to Nieketi's son, appellant said that Nieketi and Rosemary had to stay in the apartment.

After approximately three hours of negotiating, Deputy Long and appellant agreed that appellant would come out of the apartment if Deputy Long would give him a pack of menthol cigarettes and allow him to smoke one. Appellant walked out on to the porch with a gun at his side. Eight to 10 minutes later, appellant threw the gun aside and walked into the parking lot with his hands at his side. Deputy Long handcuffed him, allowed him to smoke a cigarette, and then put him in a patrol car.

During its direct examination, when the State asked Nieketi whether she was worried about appellant's gun, she replied, "No not really, but I am scared of guns."

Nieketi further testified that appellant never threatened her or Rosemary, shouted at or argued with them, or pointed his gun at them. Nieketi later testified, however, that she did not feel that she could leave the apartment at any time because appellant said that he would not let her or Rosemary leave and that if she could have left the apartment with the children and Rosemary, she would have done so.

## ANALYSIS

Appellant was charged with two counts of aggravated kidnapping. A person commits kidnapping if he intentionally or knowingly abducts another person. TEX. PEN.CODE ANN. § 20.03(a) (Vernon 2003). The Penal Code defines "abduct" as "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." [4] TEX. PEN.CODE ANN. § 20.01(2) (Vernon Supp.2006). Under the Penal Code, "restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1) (Vernon Supp.2006). Restraint is "without consent" if it is accomplished by "force, intimidation, or deception." *Id.* § 20.01(1)(A). Thus, kidnapping is a completed offense when (1) a restraint is accomplished and (2) there is evidence that the actor had the specific intent to prevent liberation by secretion or by the use or threatened use of deadly force. *Santellan v. State,* 939 S.W.2d 155, 162 (Tex.Crim.App.1997); *see also* TEX. PEN.CODE ANN. § 20.03 (Vernon 2003).

The offense of kidnapping is aggravated if abduction is committed with the specific

---

4. The trial court charged the jury only on the second manner of abduction, restraining a person with intent to prevent his liberation by using or threatening to use deadly force.

intent to commit any of the aggravating factors enumerated in section 20.04(a) of the Penal Code, including the intent to use the victim as a shield or hostage. *See* Tex. Pen.Code Ann. § 20.04(a) (Vernon 2003); *Padgett v. State*, 683 S.W.2d 453, 457 (Tex. App.-San Antonio 1983, no pet.). Under section 20.04 of the Texas Penal Code, a person commits aggravated kidnapping "if he intentionally or knowingly abducts another person with the intent to ... use him as a shield or hostage"[5] or "if he intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense."[6]

The indictment in cause number 1031071 charged appellant with "intentionally and knowingly abduct[ing] Nieketi Williamson ... without his [sic] consent, with intent to prevent his [sic] liberation by using and threatening to use deadly force namely, a firearm on [Nieketi] and with intent to use [Nieketi] as a hostage." In cause number 1031072, the indictment charged appellant with "intentionally and knowingly abduct[ing] Rosemary Williamson ... without his [sic] consent, with intent to prevent his [sic] liberation by using and threatening to use deadly force namely, a firearm, on [Rosemary] and with intent to use [Rosemary] as a hostage." Thus, the State was required to prove with regard to each complainant that appellant (1) intentionally and knowingly restricted the complainant's movement without her consent such that he substantially interfered with her liberty (2) with the intent (a) to prevent her liberation through the use and threatened use of a firearm on her and (b) to use her as a hostage.

### Sufficiency of the Evidence

When an appellant challenges both the legal and factual sufficiency of the evi-

dence, we must first determine whether the evidence was legally sufficient to support the verdict. *Harmond v. State*, 960 S.W.2d 404, 406 (Tex.App.-Houston [1st Dist.] 1998, no pet.).

### *Legal Sufficiency*

In his first and second points of error, appellant argues that the evidence is legally insufficient to prove that he restrained Nieketi and Rosemary and that he intended to use Nieketi and Rosemary as hostages.

We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000); *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Although our analysis considers all the evidence presented at trial, we may not reweigh the evidence and substitute our judgment for that of the fact finder. *King*, 29 S.W.3d at 562.

### *Restraint by Use or Threatened Use of Deadly Force*

■ Appellant argues that the evidence is legally insufficient to prove that he restrained Nieketi and Rosemary by using or threatening to use deadly force.

This court's opinion in *Gonzales v. State*, 190 S.W.3d 125 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd), *cert. denied*, —— U.S. ——, 127 S.Ct. 504, 166 L.Ed.2d 377 (2006), is instructive. In *Gonzales*, the appellant forced himself into his ex-wife's car after she had picked up their two daughters from daycare, showed her a handgun, and told her to drive. *Id.* at 128. The appellant spent between two and

---

**5.** Tex. Pen.Code Ann. § 20.04(a) (Vernon 2003).

**6.** *Id.* § 20.04(b) (Vernon 2003).

three hours in the car with his ex-wife and daughters, arguing with her and telling her where to drive. *Id.* Eventually, the appellant led his ex-wife to a remote area of Katy, Texas where he shot and killed her. *Id.* The appellant fled to California, but was later arrested and convicted of capital murder for the kidnapping and murder of his ex-wife. *Id.* at 128, 129. On appeal, the appellant argued that the evidence was legally and factually insufficient to prove kidnapping to support the capital murder conviction. *Id.* at 131.

This court affirmed the appellant's conviction, stating:

> With her children in the back seat and [the] appellant bearing a gun in the passenger seat, [the appellant's ex-wife] was restrained from leaving the car. She asked repeatedly to be let go, showing the restraint was without consent. By bearing the gun and refusing to let [his ex-wife] go, [the] appellant showed an intent to restrain [his ex-wife] by threatening to use deadly force.

*Id.* at 133.

Like the appellant in *Gonzales*, appellant forced himself into Nieketi's apartment and brandished a gun. Nieketi asked appellant to leave, but he refused. While in the apartment, appellant fired his gun three times and refused to let Nieketi and Rosemary leave the apartment, even though he allowed the children to leave. By bearing and firing his gun in the apartment and refusing to let Nieketi and Rosemary leave, appellant restrained both Nieketi and Rosemary by threatening deadly force. *See id.; see also* TEX. PEN. CODE ANN. § 20.01(2)(B).

Based on the foregoing, we conclude that the evidence is legally sufficient to prove that appellant restrained both Nieketi and Rosemary by threatening deadly force. *See Wesbrook,* 29 S.W.3d at 111; *King,* 29 S.W.3d at 562.

*Hostage*

■ Appellant argues that the evidence is legally insufficient to prove that he intended to use Nieketi and Rosemary as hostages because there is no evidence to show that he threatened to harm Nieketi and Rosemary as required under the definition of a hostage.

The Texas kidnapping statute does not define the word "hostage." *See* TEX. PEN. CODE ANN. § 20.01 (Vernon Supp.2006) (definitions section). In his brief, appellant utilizes the definition of "hostage" as it appears in *Black's Law Dictionary:* "An innocent person held captive by another who threatens to kill or harm that person if one or more demands are not met." *See* BLACK'S LAW DICTIONARY 742 (7th ed.1999). We can find no reported Texas case that addresses the meaning of the term "hostage" in a kidnapping context and, therefore, no Texas case that adopts this definition.[7] Several cases from other states have addressed this issue, however. In *State v. Crump,* the New Mexico Supreme Court cited several dictionary definitions, all of which defined "hostage" within the context of international warfare. *See* 82 N.M. 487, 484 P.2d 329, 334 (1971). From these definitions, the court concluded that the term, as used in New Mexico's kidnapping statute, "implie[d] the unlawful tak-

---

7. In an unreported 2000 decision, the Austin Court of Appeals defined a hostage as "[a]n innocent person held captive by one who threatens to kill or harm him if demands are not met" in determining whether evidence that the appellant had said that he had a gun because he was going to take his fifth-grade class hostage involved making a threat of violence toward his classmates. *See In the Matter of L.J.G.,* No. 03–99–00412–CV, 2000 WL 963163, at *7 (Tex.App.-Austin, July 13, 2000, no pet.) (not designated for publication) (emphasis omitted).

ing, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person." *Id.* at 334–35. Several other states, in interpreting the word "hostage" in their own kidnapping statutes, have adopted *Crump's* definition. *See Mobley v. State*, 409 So.2d 1031, 1036 n. 11 (Fla.1982); *State v. Littlefield*, 389 A.2d 16, 20–21 (Me.1978); *State v. Lee*, 33 N.C.App. 162, 234 S.E.2d 482, 484 (1977).

The kidnapping statutes at issue in *Mobley, Littlefield,* and *Lee* use the term "hostage" in a manner similar to its use in the Texas aggravated kidnapping statute at issue here. In Texas, a person commits aggravated kidnapping when he knowingly or intentionally abducts another person with the intent to commit any of the aggravating factors enumerated in section 20.04(a), including the intent to use the victim as a shield or hostage. *See* Tex. Pen.Code Ann. § 20.04(a); *Padgett*, 683 S.W.2d at 457. At the time of the *Mobley* decision, Florida's kidnapping statute read, in part:

(1)(a) "Kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:

1. Hold for ransom or reward or as a shield or hostage.

Law of June 9, 1977, ch. 77–174, § 1, 1977 Fla. Laws 719, 886. The Maine kidnapping statute at issue in *Littlefield* read, in part:

1. A person is guilty of kidnapping if . . . :

A. He knowingly restrains another person with the intent to

(1) hold him for ransom or reward;

(2) use him as a shield or hostage.

Law of March 1, 1976, ch. 499, § 301, 1975 Me. Laws 1273, 1300. Similarly, at the time of the *Lee* decision, North Carolina's kidnapping statute read, in part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

1. Holding such other person for ransom or as a hostage or using such other person as a shield.

Law of June 25, 1975, ch. 843, § 1, 1975 N.C. Sess. Laws 1198, 1198.

Two other states have adopted definitions that are similar to the *Crump* definition. *See State v. Stone*, 122 Ariz. 304, 594 P.2d 558, 563 (1979) ("[T]he term 'hostage' . . . implies the holding or detaining of a person as security for the performance, or the forbearance, of some act by a third person."); *Ingle v. State*, 746 N.E.2d 927, 939 (Ind.2001) ("[T]he term 'hostage' . . . refers to a person who is held as security for the performance or forbearance of some act by a third party."). The kidnapping statutes at issue in *Stone* and *Ingle* also use the word "hostage" similarly to the Texas aggravated kidnapping statute. The Arizona kidnapping statute at issue in *Stone* read, in part, "A person . . . who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains any individual for ransom, reward, pecuniary benefit, OR OTHERWISE, or as a shield or hostage . . . is guilty of a felony." Law of May 8, 1974, ch. 110, § 1, 1974 Ariz. Sess. Laws 346, 346. At the time of the *Ingle* decision, Indiana's kidnapping statute read, in part:

(a) A person who knowingly or intentionally confines another person:

. . . .

4. with intent to use the person confined as a shield or hostage; commits kidnapping, a class A felony.

(b) A person who knowingly or intentionally removes another person, by fraud, enticement, force, or threat of force, from one place to another:

. . . .

4. with intent to use the person removed as a shield or hostage;

commits kidnapping, a class A felony.

IND.CODE § 35–42–3–2 (2004).

Based on the foregoing, we decline to adopt the definition of "hostage" urged by appellant and adopt the definition of "hostage" as articulated by the New Mexico Supreme Court in *Crump.* Thus, we hold that the term "hostage," as used in section 20.04 of the Texas Penal Code means "the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person." *See Crump,* 484 P.2d at 334–35.

Appellant argues that the evidence is legally insufficient to prove that he intended to use Nieketi and Rosemary as hostages because there is no evidence to show that he threatened to harm Nieketi and Rosemary as required under the definition of a hostage. Under the definition that we have adopted here, however, the State was not required to prove that appellant threatened to harm Nieketi and Rosemary.

We overrule appellant's first and second points of error.

### Factual Sufficiency

In his third and fourth points of error, appellant argues that the evidence is factually insufficient to prove that he restrained Nieketi and Rosemary and that he intend-ed to use Nieketi and Rosemary as hostages.

We begin the factual sufficiency review with the presumption that the evidence supporting the jury's verdict is legally sufficient. *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We view all of the evidence in a neutral light,[8] and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust or the verdict is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 10–11 (Tex.Crim.App.2000). Regarding the second basis for a finding of factual insufficiency, "an appellate court must . . . be able to say, with some objective basis in the record, that the great weight and preponderance of the (albeit legally sufficient) evidence contradicts the jury's verdict before [the court] is justified in exercising its appellate fact jurisdiction to order a new trial." *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim.App.2006) (emphasis omitted). For a review of factual sufficiency, we must consider the most important evidence that the appellant claims undermines the verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

### Restraint by Use or Threatened Use of Deadly Force

Appellant argues that the evidence is factually insufficient to prove that he restrained Nieketi and Rosemary by using or threatening to use deadly force. In support of this argument, appellant cites *Gaffney v. State,* in which the Texarkana Court of Appeals held that the evidence was factually insufficient to support the appellant's conviction for aggravated kidnapping. *See* 940 S.W.2d 682, 686 (Tex. App.-Texarkana 1996, pet. ref'd). In *Gaffney,* the complainant testified that he felt restricted in his freedom and movements

---

8. *Ladd v. State,* 3 S.W.3d 547, 557 (Tex.Crim. App.1999).

because of *Gaffney's* representation that he had a Glock pistol and was going to "Glock someone." *Id.* at 685. However, Gaffney did not volunteer that he had a pistol but only admitted this fact after being questioned by the complainant; the complainant had willingly allowed Gaffney to get into his car to take him to get gas for Gaffney's car; while in the complainant's car, Gaffney asked him to do various things but never ordered the complainant to stay at or go to a particular place; Gaffney told the complainant that he could go home at any time; and the complainant admitted that he was not prohibited from talking to other people and that he could have driven off on several occasions. *Id.* at 683–85. Here, Nieketi let appellant into her apartment only after he damaged her front door trying to kick it in. Moreover, unlike the appellant in *Gaffney,* appellant brandished a gun and fired three shots while in the apartment, told Nieketi and Rosemary that, although the children could leave, they had to stay, and he threatened to shoot should the police try to storm the apartment.

Thus, after neutrally examining all the evidence, we find that the evidence supporting the finding that appellant restrained both Nieketi and Rosemary by threatening deadly force is not so weak that the verdict is clearly wrong or manifestly unjust; nor is the verdict against the great weight and preponderance of the evidence. *See Johnson,* 23 S.W.3d at 10–11.

*Hostage*

Appellant contends that the evidence is factually insufficient to prove that he intended to use Nieketi and Rosemary as hostages because there is no evidence to show that he threatened to harm Nieketi and Rosemary as required under the definition of a hostage. Under the definition that we have adopted here, however, the State was not required to prove that appellant threatened to harm Nieketi and Rosemary. It is sufficient that appellant unlawfully restrained Nieketi and Rosemary by confining them without their consent and holding them as security against any attempt by the police to storm the apartment to liberate them or to seize appellant.

We overrule appellant's third and fourth points of error.

## Lesser Included Offense

■ In his fifth and sixth points of error, appellant contends that the trial court erred when it refused to charge the jury on the lesser included offense of unlawful restraint.

■ A jury must be charged on a lesser included offense if (1) the lesser included offense is included within the proof necessary to establish the charged offense and (2) some evidence exists in the record that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.1993); *Robinson v. State,* 174 S.W.3d 320, 333 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd). Thus, there must be some evidence that would negate the element raising the lesser included offense to the greater charged offense. *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *Robinson,* 174 S.W.3d at 333.

■ Unlawful restraint is a lesser-included offense of aggravated kidnapping. *Anderson v. State,* 125 S.W.3d 729, 731 (Tex.App.-Texarkana 2003, no pet.) (citing *Schweinle v. State,* 915 S.W.2d 17, 19 (Tex. Crim.App.1996)).[9] Accordingly, the first

---

**9.** In its 1996 *Schweinle* opinion, the Court of Criminal Appeals held that "false imprison-

ment is a lesser-included offense of kidnapping and aggravated kidnapping." *Schweinle*

prong of the test is satisfied. *See Rousseau,* 855 S.W.2d at 672; *Robinson,* 174 S.W.3d at 333. The next question is whether some evidence exists in the record that would permit a rational jury to find that if appellant is guilty, he is guilty only of unlawful restraint. *See Rousseau,* 855 S.W.2d at 672; *Robinson,* 174 S.W.3d at 333.

A person commits unlawful restraint "if he intentionally or knowingly restrains another person." TEX. PEN.CODE ANN. § 20.02 (Vernon 2003). A person commits aggravated kidnapping "if he intentionally or knowingly abducts another person with the intent to ... use him as a shield or hostage" [10] or "if he intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." [11] The Penal Code defines "abduct" as "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." TEX. PEN.CODE ANN. § 20.01(2). Abduction is different from restraint because it adds to "restraint" the intent to prevent liberation. *Curry v. State,* 30 S.W.3d 394, 403 (Tex.Crim.App.2000). Without this accompanying mental state, there is no abduction, only restraint. *Id.* Thus, in order for appellant to have been entitled to an instruction on the lesser offense of unlawful restraint, the record must contain some evidence that negates the jury's finding that appellant intended to prevent the liberation of Nieketi and Rosemary. *See Aguilar,* 682 S.W.2d at 558; *Robinson,* 174 S.W.3d at 333.

Appellant points to no evidence in the record that could undermine this finding; nor have we found any. Rather, appellant's refusal to allow Nieketi and Rosemary to leave the apartment with the children and his statements to Deputy Long that "he was not going to jail" and that if police stormed the apartment, he would be "shooting to kill" is evidence of appellant's intent to prevent Nieketi's and Rosemary's liberation. *See Curry,* 30 S.W.3d at 403. Therefore, the trial court did not err when it refused to instruct the jury on the lesser included offense of unlawful restraint.

We overrule appellant's fifth and sixth points of error.

### CONCLUSION

We affirm the judgment of the trial court.

---

*v. State,* 915 S.W.2d 17, 19 (Tex.Crim.App. 1996). In 1997, the Legislature renamed the crime of "false imprisonment"; it is now called "unlawful restraint." Substantively, the former "false imprisonment" and the current "unlawful restraint" statutes are identical. *Compare* Act of May 29, 1993, 73rd Leg.,

R.S., ch. 900, § 1.01, sec. 20.02, 1993 Tex. Gen. Laws 3586, 3615, *with* TEX. PEN.CODE ANN. § 20.02 (Vernon 2003).

**10.** TEX. PEN.CODE ANN. § 20.04(a).

**11.** *Id.* § 20.04(b).