**AFFIRM; and Opinion Filed June 7, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01533-CR

### JERRY LEE MILLER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F10-42110-J**

## MEMORANDUM OPINION
Before Justices Bridges, O'Neill, and Murphy
Opinion by Justice Murphy

A jury convicted Jerry Lee Miller of the aggravated kidnapping of his ex-wife, Aletheia Miller (Miller), and the trial court sentenced him to fifteen years' confinement and assessed a $2000 fine. *See* TEX. PENAL CODE ANN. § 20.04 (West 2011). Appellant argues in one issue the trial court abused its discretion by denying his request for a jury instruction on the lesser included offense of unlawful restraint. We affirm.

## BACKGROUND

Both appellant and Miller testified at trial, but their versions of the events differed significantly. Our background recitation is based on Miller's testimony.

Appellant and Miller were married for four years before divorcing. They attempted to reconcile after the divorce, but Miller decided she wanted to end the relationship. She cut off communication with appellant in May 2010, but he continued to try contacting her.

On October 8, 2010, Miller stepped out of her house to check the mail. While she was outside she saw appellant approaching her quickly. She tried to run into the house and close the door, but he overpowered her, pushed the door open, and forced her into the living room. Appellant then grabbed her by the hair and said, "Did you think I was going to go on letting you live, to walk around free to do what you wanted to do? You're going to die today." He then pointed a gun at her, told her to sit down on the couch, and said, "You're going to die today. I've been planning this. I'm gonna put six bullets in you and I'm gonna put the rest in me."

Appellant hit Miller several times and asked her about any other men she had been seeing. He told her to take her clothes off and bend down on the couch because he was going to force her to have sex with him. He then told her that he did not want to have sex with her because she was a "whore."

Miller told appellant she had to use the restroom. She then noticed the gun was sitting on a table. She grabbed the gun and ran toward the restroom, and appellant ran after her. She made it into the restroom, turned around, and pointed the gun at appellant. He was right behind her. They "tussled" over the gun, and during the struggle, the gun fell into the toilet. Appellant recovered the gun, took Miller back into the living room, and forced her to sit on the couch.

Appellant decided he wanted to leave and forced Miller—who was still naked from the waist down—into his car. Appellant allowed Miller to put on a pair of pants he had in the car.

Appellant entered the highway and drove for some distance before stopping at a convenience store to buy gas, water, and beer. He told Miller "he was going to get some gas, that he was watching [her], [and she] better not try anything." He went inside and left Miller in the car alone. She testified she did not try to signal other customers because she was "afraid that he was gonna shoot [her]."

Appellant returned and tried to start the car, but it would not start. The car started after a few minutes, and they got back on the highway. Appellant told Miller, "We're going to Houston. They're going to find our bodies in Houston."

Appellant drove for some distance before stopping and telling Miller, "You know what? You going home. We're going home." Miller testified she could not get out of the car at this time because "[h]e had a gun and [she] was afraid."

Appellant drove to a restaurant, where he stopped to use the restroom. This time he let Miller out of the car. He told her to go inside and use the restroom, but "[d]on't try anything." Miller walked into the restaurant while appellant followed behind her. She went into the women's restroom alone with her cell phone she had recovered from the floor of the car. She told an employee she found in the restroom that her estranged husband had kidnapped her. Miller hid in the stall and called 911. She told the 911 operator she had been kidnapped. But she could not tell the operator where she was located. She also called her daughter.

Appellant came into the women's restroom and told Miller to come out, but she told him she was not finished. Appellant crawled into the stall and unlocked the door. He tried to get Miller to leave. Once outside, Miller stopped and told appellant she was not going anywhere with him. Appellant pushed her into the car. Just as appellant was getting into the car, the police arrived and arrested him.

**DISCUSSION**

Appellant complains in his sole issue that the trial court abused its discretion by denying his request for a jury instruction on the lesser included offense of unlawful restraint. *See* TEX. PENAL CODE ANN. § 20.02. Appellant relies on his own testimony to argue there was some evidence he never threatened Miller with a gun. He asserts a rational jury could have believed Miller's testimony she did not go freely with appellant while also believing appellant's testimony

–3–

he did not threaten her. He also argues the jury could have found that appellant restrained Miller but did not abduct her; thus appellant was guilty only of unlawful restraint.

A defendant is entitled to an instruction on a lesser included offense when (1) the lesser included offense is included within the proof necessary to establish the charged offense and (2) there is some evidence in the record that if the defendant is guilty, he is guilty only of the lesser included offense. *See Young v. State*, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009) (per curiam); *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). Under the second prong, a court must ask whether there is evidence that supports giving the instruction to the jury. *Hall*, 225 S.W.3d at 536.

In our review under the second prong, we consider all of the evidence admitted at trial, not just the evidence presented by the defendant. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser offense instruction. *Id.* at 446–47 (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). "If a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing that he is guilty only of a lesser-included offense, then a charge on a lesser-included offense is not required." *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) (quoting *Bignall*, 887 S.W.23 at 24).

Unlawful restraint is a lesser included offense of kidnapping. *Anderson v. State*, 125 S.W.3d 729, 731 (Tex. App.—Texarkana 2003, no pet.); *see also Schweinle v. State*, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); *Jenkins v. State*, 248 S.W.3d 291, 299 n.9 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Regarding the second prong, the only evidence appellant alludes to as justification for a lesser included offense instruction is his own testimony. While other individuals—including Miller's son-in-law and the police officer that arrested appellant—testified at appellant's trial,

appellant does not suggest their testimony or any evidence other than his own testimony supports a lesser offense instruction. We thus focus on appellant's testimony but do so without disregarding the remainder of the record. *See Bignall*, 887 S.W.2d at 24 (noting defendant is entitled to instruction on lesser included offense if evidence from any source affirmatively raises issue; concluding lower court erroneously focused solely on appellant's evidence while disregarding remainder of record).

The trial court asked both parties at the charge conference if they had an objection to the jury charge. Appellant raised the following objection:

> I believe that the evidence from [appellant's] testimony shows that he did not use or threaten deadly force on that day. Therefore, the evidence does not meet the requirement for abduction, and I would ask for the lesser included offense of unlawful restraint to be included in the Court's Charge.

The trial court denied appellant's request, stating that if the jury believed appellant's testimony, it would conclude he "did not do anything; unlawful restraint or anything." The trial court added that based on appellant's testimony, "I don't feel like you have presented any evidence to indicate that your client committed any offense." We agree with the trial court's analysis of the evidence.

Appellant testified at trial, and his testimony regarding the day's events differed significantly from Miller's. He testified that Miller voluntarily allowed him in her house. He admitted he had a gun and testified that when Miller saw it, she said, "I guess you gonna come over here and shoot me now." He told her the gun was not for her. He said he put the gun on the table and told her she could "go ahead and take it back there and put it in the back room." Miller took the gun, went to the bathroom, and held it over the toilet. Appellant tried to get it back, and "it hit the water in the toilet." He testified that at this point, Miller was able to get the gun and she turned it towards appellant; he grabbed Miller and took the gun from her.

Appellant testified further he put the gun in his pocket and tried to convince Miller to come into the living room and talk. He tried to get her to sit down, but she panicked. "She just got up, and you know, start saying things like we can get together, we can have sex, you know, just start taking her clothes off . . . ." Appellant said he was "freaking out" and tried to get Miller to sit down. Miller started removing her clothes; she then said she had to "get away from here," and appellant suggested they go somewhere. He told her to put her clothes back on, and he walked back out to his car.

Appellant said he was in his car smoking a cigarette when Miller came outside with "nothing on from the waist down." Appellant got his work pants from the backseat and told her to put those on. When asked if this was unusual behavior for Miller, appellant testified, "I mean, I do know one thing about her. She don't like being wrong. And when, you know, she have a guilty conscience, she panics. She don't like being wrong, and I believe she had a guilty conscience about, you know, picking up that gun and doing allegedly she did."

Appellant tried to get Miller to go back into the house and put her clothes on, but she said they could "go on and go." Appellant said he wanted to go somewhere they could talk, "calm down, try to talk some sense into her. All [he] wanted to do was just ask her some questions."

They drove for some distance and stopped at a gas station, which agrees with Miller's testimony. Appellant claims that after they left the gas station, Miller suggested they go to San Antonio. So they headed in that direction. After driving for approximately twenty to thirty minutes, appellant stopped at a McDonald's so Miller could use the restroom; she was in the restroom for a long time. Appellant said that when they left the McDonald's, he intended to take Miller home. He was arrested before he could get back into his car.

When the State asked appellant if he threatened Miller with the gun that day, he responded, "No, sir." When the State asked him if he told Miller that he planned to kill her, appellant responded, "No, sir." Appellant said that if he planned on doing anything like that, he would not have taken her out in public; to him, "everything was just normal" and he "couldn't believe [Miller] felt this way." Appellant said that if Miller "felt this way, she could have told [him]. She didn't even have to go."

To summarize appellant's testimony, Miller voluntarily let him in the house; she suggested they have sex and removed her clothes; she voluntarily got into his car while he was sitting outside Miller's house and suggested they go somewhere; and it was Miller's suggestion they go to San Antonio. Appellant did not threaten her, did not plan to kill her, "everything was just normal" to him, and she "didn't have to go."

A defendant's own testimony that he committed no offense, or testimony that otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser included offense. *Lofton*, 45 S.W.3d at 652. Appellant's testimony is that no offense occurred. He also does not argue other evidence exists that would show appellant is guilty only of a lesser included offense, and we have found none in our examination of the record. *See id.* (noting charge on lesser included offense not required when defendant presents evidence he committed no offense, or presents no evidence, and there is no evidence otherwise showing he is guilty only of a lesser included offense).

We conclude the trial court did not abuse its discretion by denying appellant's request for a jury instruction on the lesser included offense of unlawful restraint, and we affirm the trial court's decision.

/Mary Murphy/
MARY MURPHY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

111533F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JERRY LEE MILLER, Appellant

No. 05-11-01533-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F10-42110-J.
Opinion delivered by Justice Murphy.
Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 7th day of June, 2013.

/Mary Murphy/

MARY MURPHY
JUSTICE