

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00206-CR

---------

MICHAEL DONTE DUNN                                                      APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1436656D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury found Appellant Michael Donte Dunn guilty of aggravated kidnapping and attempted sexual assault, and the trial court sentenced him to forty-five years' confinement for aggravated kidnapping and fifteen years' confinement for attempted sexual assault. Dunn raises four issues on appeal.

---

[1]See Tex. R. App. P. 47.4.

His first two issues challenge the sufficiency of the evidence primarily concerning his intent to commit these offenses, his third issue presents an ineffective-assistance-of-counsel challenge, and his fourth issue contends that the trial court abused its discretion in failing to conduct a hearing on his motion for new trial. We will affirm as modified.

## II. FACTUAL BACKGROUND[2]

On November 13, 2015, at approximately 8:00 a.m., a twenty-four-year-old woman, Letty Mathow,[3] left her Fort Worth apartment to go to nursing school. As Mathow walked down the stairs, she was approached by Dunn—a person who lived in the same apartment complex and whom Mathow had met once before. Mathow stated that Dunn asked her if he could use her cell phone because he did not have a phone and he needed to make a phone call since he was being evicted. Mathow unlocked her phone and gave it to Dunn. Dunn began walking and seemingly talking on the phone. Shortly thereafter, Mathow told Dunn that she needed her phone back because she had to go to class to take a quiz. Dunn responded by asking Mathow if she liked watches. Mathow said that she did,

---

[2]Because Dunn challenges the sufficiency of the evidence concerning the intent element of the offenses, we set forth a detailed review of the evidence.

[3]A pseudonym.

2

and when she began following Dunn up the stairs, he grabbed her arm and pulled her into his apartment.[4]

Once inside, Dunn locked the door and told Mathow to go upstairs to see the watches. Mathow explained that she needed to go to class and said that Dunn could keep her phone. Dunn then pulled out a screwdriver, threatened to shoot Mathow, and told her that "[she] wasn't going anywhere." Mathow—who had her backpack when she was pulled into Dunn's apartment—remembered she had a knife in her backpack, and she got it out. She told Dunn he needed to let her go, but Dunn again told her that she wasn't going anywhere. As Dunn moved toward Mathow, she cut his lower arm. Dunn grabbed her and threw her to the ground. As the two struggled on the ground, Dunn got on top of Mathow, straddled her, and tried to pull her shirt up. Still in possession of her knife, Mathow cut Dunn on his shoulder. Dunn remained on top of Mathow and pressed his knee against her throat to choke her. Mathow pretended to lose consciousness, and Dunn lessened the pressure he was applying with his knee. Mathow scrambled up off the floor and ran for the door. But Dunn caught her, and their struggle resumed. Mathow slashed Dunn in his torso, and he "started freaking out saying he was going to die because he lost -- he lost a lot of blood."

---

[4]Although Dunn was apparently staying in the apartment, his name was not on the lease, and he was considered by the assistant apartment manager to be an "unauthorized occupant."

At this point, in an odd turn of events, Dunn asked Mathow to help him and to not tell anyone what had happened; Dunn told her he had five kids and could not go to jail. Mathow told Dunn she was a nursing student, said she would help him, and told him to go get some towels and her phone. When Dunn went to get the towels, Mathow grabbed her phone and her backpack, ran out of the apartment, and called 9-1-1. Paramedics arrived and treated Mathow for her injuries, including facial bruising, a swollen lip, and a broken blood vessel in her eye. She was covered in Dunn's blood.

In response to Mathow's 9-1-1 call, Officer Joseph Harvick of the Fort Worth Police Department (FWPD) was dispatched to the apartment complex. His field-training partner, Officer Garcia, arrived with him. At the apartment-complex office, they found Mathow shaky, scared, and covered in blood. Harvick spoke with Mathow and put out an alert for officers to be on the lookout for Dunn based on Mathow's description of him. Harvick confirmed at trial that as Mathow recounted the incident to him she did not mention that Dunn had pulled up her shirt; but Harvick said Mathow told him she thought Dunn was going to rape her.

Officer Sammie Brinegar of the FWPD was also dispatched to the scene and upon arrival searched for the suspect. Brinegar received a call that a male matching Dunn's description was banging on apartment doors in a nearby apartment complex and that he appeared to be injured. Brinegar drove there and quickly spotted Dunn in a breezeway. When Dunn saw Brinegar approaching, Dunn said, "You got me. I give up." Dunn asked Brinegar what crime he was

4

being charged with and said he had not hurt anyone. Brinegar took Dunn back to the scene where he was treated by MedStar EMTs and taken into custody.

## III. PROCEDURAL BACKGROUND[5]

A Tarrant County grand jury indicted Dunn for the offenses of aggravated kidnapping and attempted aggravated sexual assault, and approximately six months later, Dunn's cases reached a third trial setting scheduled for June 26, 2017. On June 22, 2017, the State uploaded a two-hour video of an interview the FWPD had conducted with Dunn. Dunn filed a motion for continuance because the State had uploaded the video for the first time only four days before trial, and Dunn's counsel needed more time to review the video because, due to technical difficulties, he had been unable to access it for viewing until the day before trial.

At the pretrial hearing held on the morning of trial, Dunn's counsel explained the existence of the video had surprised him because he had filed a written discovery request and "Michael-Morton-Act letter" over one year earlier, and that even with three previous trial settings, the State had not produced the video earlier. Dunn's counsel explained that when he viewed the video for the first time the day before trial, he heard statements by Dunn during the interview that he had been unaware of because he knew only of Dunn's statements included in the police offense report. Thus, Dunn's trial counsel argued that the

---

[5]Because Dunn alleges ineffective assistance of counsel, we set forth a detailed procedural background.

5

State's late production of the video necessitated a short two- or three-week continuance of the trial so he could conduct additional investigation.

The prosecutor acknowledged that the last-minute uploading of the video was the State's mistake but explained that Dunn's counsel should still have known about the video because it was referenced extensively in the police report. The prosecutor explained that the State did not intend to introduce the video at trial, so that in any event, Dunn was not harmed. The trial court ruled that the video would be excluded from evidence for all purposes, including impeachment.

Dunn was arraigned, and he pleaded not guilty. The State presented six witnesses at trial—Mathow, Harvick, and Brinegar, as well as FWPD crime scene officers Susan Shore and Laurie Scheiern and the assistant apartment manager, Shelli Dickey. Dunn did not present any witnesses. Neither side objected to the jury charge, and the jury returned a guilty verdict for the offenses of aggravated kidnapping and attempted sexual assault,[6] and a finding that a screwdriver was a deadly weapon.

---

[6]The jury charge and verdict form returned by the jury and read in open court conflict with the trial court's written judgment regarding count two. The jury charge submitted and the jury found Dunn guilty of the offense of attempted sexual assault under section 22.011 of the Texas Penal Code, while the trial court's subsequent written "judgment of conviction by jury" labeled the offense as attempted *aggravated* sexual assault under section 22.021 of the Texas Penal Code. Thus, we modify the trial court's written judgment of conviction to conform to the jury's verdict and reflect that Dunn was convicted of attempted sexual assault. *See* Tex. R. App. 43.2(b); *Mayes v. State*, 536 S.W.3d 102, 112 (Tex. App.—Amarillo 2017, pet. ref'd) (reforming "judgments to reflect that appellant was convicted of sexual assault" and not aggravated sexual assault); *see also Lopez v. State*, No. 02-17-00341-CR, 2018 WL 3297905, at *1 (Tex. App.—Fort

6

Dunn elected to have the trial court assess punishment, and the court assessed his punishment at forty-five years' confinement for aggravated kidnapping and fifteen years' confinement for attempted sexual assault.

After Dunn filed his notice of appeal, he filed a motion for new trial and eventually a second amended motion for new trial, supported by his affidavit, in which he argued, among other things, that he had received ineffective assistance of trial counsel. Despite Dunn's request for a hearing, the trial court did not hold a hearing or rule on the motion for new trial, and it was overruled by operation of law.

## IV. WHETHER THE EVIDENCE IS SUFFICIENT TO PROVE THAT DUNN INTENDED TO INFLICT BODILY INJURY ON MATHOW OR TO SEXUALLY ABUSE HER

In his first issue, Dunn asserts that the evidence is insufficient to prove he intended to inflict bodily injury on, violate, or sexually abuse Mathow, which the State alleged as the aggravating element of the aggravated kidnapping offense. Dunn's basic contention is that there was no evidence to show he intended to inflict bodily injury on Mathow, to violate her, or to sexually abuse her because her testimony regarding this element was inconsistent and unreliable.

---

Worth July 5, 2018, no pet. h.) (mem. op., not designated for publication) ("When there is a conflict between the trial court's oral pronouncement and its written judgment, the oral pronouncement controls, and the solution is to reform the written judgment to conform to the oral pronouncement.").

7

## A. Standard of Review

When determining whether the evidence is sufficient to support a criminal conviction, we apply the well-established standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the verdict and determine whether a rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 313; *Brooks*, 323 S.W.3d at 899. The jury, as the fact-finder, may make reasonable inferences from the evidence presented at trial in determining an appellant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). When there is conflicting evidence, we presume the fact-finder resolved those conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the trier of fact's determinations of a witness's credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Our role as an intermediate appellate court is restricted to guarding against the rare occurrence when a fact-finder does not act rationally. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (citing *Laster v. State*, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009)).

## B. Applicable Law

A person commits an offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to: inflict bodily injury on her

8

or violate or abuse her sexually. Tex. Penal Code Ann. § 20.04(a)(4) (West 2011). To prove Dunn's guilt of the alleged offense of aggravated kidnapping, the State was required to produce evidence that, viewed in the light most favorable to the jury's verdict, was sufficient to allow a rational juror to conclude beyond a reasonable doubt that Dunn intentionally or knowingly abducted Mathow with the intent to inflict bodily injury upon her or to violate or abuse her sexually. *See Uddin v. State*, 503 S.W.3d 710, 716 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Wiley v. State*, 820 S.W.2d 401, 407 (Tex. App.—Beaumont 1991, no pet.). The penal code defines "abduct" as meaning "to restrain a person with intent to prevent his liberation by: secreting or holding him in a place where he is not likely to be found; or using or threatening to use deadly force." Tex. Penal Code Ann. § 20.01(2)(A)–(B) (West 2011). Intent to sexually abuse a kidnapped victim may be inferred from the defendant's acts and remarks, and from the surrounding circumstances. *See West v. State*, 406 S.W.3d 748, 761 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

## C. Application of the Law to the Facts

In support of his contention that the evidence is insufficient to establish aggravated kidnapping, Dunn highlights inconsistencies between Mathow's trial testimony and her written statement on the day of the incident.[7] He argues

---

[7]Although Dunn's counsel presented Mathow with her written statement during cross-examination and questioned her about it extensively, her written statement was never admitted into evidence and consequently, is not in the record before us.

9

Mathow's testimony is not credible. But the jury was apprised of any such inconsistencies when Mathow was questioned during cross-examination. She explained that when she wrote her statement, she was "still panicked about everything," and she "didn't write down every detail because [her] mind was racing[.]" She testified that at trial, she was "more composed than [she] was when [she] wrote that written statement," and "a lot of details came back to [her] later that [she] didn't remember when [she] wrote the written statement."

As the sole judge of the weight and credibility of a witness's testimony, the jury was free to believe all, none, or some of Mathow's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872 (1988). Thus, although Dunn attempted to impeach Mathow's trial testimony by comparing it to her written statement to police, viewing the evidence in the light most favorable to the verdict, a rational juror could resolve the inconsistency between Mathow's statement and her trial testimony in favor of believing Mathow's explanation that she was more composed at trial than she was immediately after the incident. And, viewing the evidence in the light most favorable to the jury's verdict, Mathow's testimony that Dunn forced her into the apartment, locked her in, stood between her and the apartment door, pulled out a screwdriver,[8] told her that she wasn't going anywhere, fought with her to prevent her from leaving, straddled her, pulled up her shirt, and pressed his knee against

---

[8]Dunn does not challenge the jury's finding that he used or exhibited the screwdriver as a deadly weapon.

10

her throat to impede her breathing is sufficient evidence from which a rational juror could conclude beyond a reasonable doubt that Dunn committed the offense of aggravated kidnapping by abducting Mathow with the intent to inflict bodily injury on her or to violate or sexually abuse her. *See Littleton v. State*, No. 04-15-00594-CR, 2017 WL 1337654, at *2 (Tex. App.—San Antonio Apr. 12, 2017, no pet.) (holding evidence sufficient to prove the abduction element of aggravated kidnapping); *West*, 406 S.W.3d at 761 (holding evidence sufficient to prove intent-to-sexually-abuse element of aggravated kidnapping).

We overrule Dunn's first issue.

## V. WHETHER THE EVIDENCE IS SUFFICIENT TO PROVE THAT DUNN COMMITTED AN ATTEMPTED SEXUAL ASSAULT

In his second issue, Dunn contends that no rational finder of fact could have found him guilty of attempted sexual assault because the only evidence of an affirmative act that could have supported the intent element of this offense was Mathow's testimony that Dunn lifted her shirt during their struggle. Dunn contends that Mathow's testimony that he pulled up her shirt fails to indicate a planned sexual assault and that the evidence is, therefore, insufficient to support his conviction for attempted sexual assault. The State argues that this case "mirrors" *Dixon v. State*, an unpublished case from the First District Court of Appeals in which the court held that the evidence was sufficient to support a conviction for attempted sexual assault. Nos. 01-04-01100-CR, 01-04-01101-

11

CR, 2005 WL 2620541 (Tex. App.—Houston [1st Dist.] Oct. 13, 2005, no pet.) (mem. op., not designated for publication).

## A. Applicable Law

A defendant commits the offense of sexual assault by intentionally or knowingly and without the complainant's consent (1) causing the penetration of the complainant's anus or sexual organ by any means, (2) causing the penetration of complainant's mouth by his sexual organ, or (3) causing the complainant's sexual organ to contact or penetrate his mouth, anus, or sexual organ. Tex. Penal Code Ann. § 22.021 (West Supp. 2017). To attempt to commit such an offense, Dunn must have specific intent, which is established by an act amounting to more than mere preparation that tends but fails to affect the commission of the offense intended. *Id.* § 15.01 (West 2011). The element "with specific intent to commit an offense" has traditionally been interpreted to mean that the actor must have the intent to bring about the desired result. *See, e.g.*, *Flanagan v. State*, 675 S.W.2d 734, 745 (Tex. Crim. App. [Panel Op.] 1982). Appellant's intent to complete the offense may be inferred from his acts. *See Romo v. State*, 568 S.W.2d 298, 304 (Tex. Crim. App. 1977).

## B. Application of the Law to the Facts

Mathow testified that she thought Dunn was going to rape her based on his act of "moving [her] shirt up" while he was on top of her, straddling her after he had wrestled her to the ground. On cross-examination, Mathow acknowledged that her only reason for thinking Dunn was attempting to sexually assault her was

12

that he lifted her shirt while straddling her; but she agreed that she had failed to include this fact in her written statement to the police:

> Q. So your only reason for thinking he's trying to sexually assault you is not included in your statement that same morning?
>
> . . . .
>
> THE WITNESS: Correct.

Dunn argues, as he did in his first issue, that because Mathow failed to include this fact in her initial statement to police, the evidence is insufficient to support his conviction for attempted sexual assault. As discussed above, the inconsistencies between Mathow's written statement and her trial testimony were both highlighted during her cross-examination and explained by Mathow.

The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *Dixon*, 2005 WL 2620541, at *5 (citing *Alexander v. State,* 740 S.W.2d 749, 758 (Tex. Crim. App. 1987)). Viewing all of the evidence in the light most favorable to the verdict as we must, we hold that a rational juror could conclude that the cumulative force of all of the evidence—including Mathow's testimony that Dunn, a stranger, had pulled her into his apartment; had locked the door; had pulled out a screwdriver; had threatened her to prevent her from leaving; had physically struggled with her; had wrestled her to the ground; and had straddled her and pulled up her shirt—all while Mathow was resisting and was cutting him with a knife—established beyond a reasonable doubt that Dunn had committed the

13

offense of attempted sexual assault, including that he possessed the intent to sexually assault Mathow. *See id.* at *3–5.

We overrule Dunn's second issue.

## VI. WHETHER DUNN'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Dunn contends that his trial counsel provided ineffective assistance. The "core" of Dunn's argument is that his trial counsel's preparation, investigation, and knowledge of applicable information was deficient in the pretrial phase; but he also complains that during trial, his trial counsel demonstrated a lack of knowledge of the rules of evidence and failed to request a jury instruction for the lesser-included offense of unlawful restraint.

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence (1) that his counsel's representation was deficient and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The second prong of *Strickland* requires Appellant to establish that, but for the trial counsel's ineffective assistance, there is a reasonable probability that the outcome of his trial would have differed. 466 U.S. at 686–87, 104 S. Ct. at 2052. "[T]he analysis of the prejudice prong turns on whether the deficiency made any difference to the outcome of the case." *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012). "This is a heavy burden which requires a 'substantial,' and not just a

'conceivable,' likelihood of a different result." *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012).

The United States Supreme Court in *Strickland* explained that the two *Strickland* prongs need not be addressed in order:

> there is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697, 104 S. Ct. at 2069.

Dunn argues that his trial counsel's performance was deficient because he "failed to read the police report, was unprepared to go to trial, was unaware of his client's interview with police, [was] ignorant of case law, and failed to request a lesser included offense."

Dunn surmises that his counsel failed to read the police report (despite counsel's statement to the contrary in the record) because, if he had read it, he would have been aware of the existence of Dunn's videotaped statement to police. Assuming without deciding that counsel's performance in this regard did meet the deficient-performance prong of *Strickland,* nonetheless Dunn's ineffectiveness argument fails because the trial court excluded Dunn's videotaped statement to the police for all purposes. There is not a reasonable probability that but for this alleged deficient performance by Dunn's counsel the

15

result would have been different.  *See Strickland*, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2071.

Dunn argues generally that his trial counsel's performance was deficient because he was not prepared to go to trial.  This contention is based on counsel's alleged failure to read the police report, failure to visit the crime scene, and failure to interview witnesses.  Assuming without deciding that counsel's performance in these respects does meet the deficient-performance prong of *Strickland*, nonetheless Dunn's not-prepared-to-go-to-trial ineffectiveness argument fails the prejudice prong of *Strickland*.  Counsel's alleged failure to read the police report, alleged failure to visit the crime scene, and alleged failure to interview witnesses, even if constituting deficient performance, nonetheless fail to meet the prejudice prong of *Strickland* because the record does not demonstrate that but for these errors, the result would probably have been different; to the contrary, no indication exists that examination of the crime scene would have contributed to Dunn's defense, and no indication exists that any witness was present in the apartment other than Dunn and Mathow.  Thus, the record does not reflect a reasonable probability that but for these alleged deficiencies by Dunn's counsel, the result would have been different.  *See Strickland*, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2071.

Finally, Dunn argues that his counsel was ineffective because he failed to request an instruction on the lesser included offense of unlawful restraint.  The offense of unlawful restraint may be a lesser included offense of aggravated

16

kidnapping as that offense was alleged in Dunn's indictment.[9] But a lesser

included offense instruction is required only when the evidence establishes that

the lesser included offense is "a valid, rational alternative to the charged offense."

*Frank*, 2011 WL 379041, at *2 (quoting *Hall v. State*, 225 S.W.3d 524, 535–36

(Tex. Crim. App. 2007)). Here, as set forth above, we have discussed the

evidence supporting the jury's finding that Dunn committed the offenses of

---

[9]As explained by the Beaumont Court of Appeals:

A person commits the offense of unlawful restraint when he intentionally or knowingly restrains another person. Tex. Penal Code Ann. § 20.02(a) (West 2003). Aggravated kidnapping occurs when a person intentionally or knowingly abducts another person with the intent to inflict bodily injury on the other person or to violate or abuse the other person sexually. *Id.* § 20.04(a)(4). To abduct a person means to restrain him with the intent to prevent his liberation. *Id.* § 20.01(2) (West Supp. 2010). Chapter 20 of the Texas Penal Code defines the term "restrain" to mean "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1). Restraint is without consent if it is accomplished by force, intimidation, or deception. *Id.* § 20.01(1)(A). Thus, proof of being restrained, which is the act required to prove unlawful restraint, is an element that can also be used to prove kidnapping. Since all of the elements of the lesser offense, unlawful restraint, are included within the proof required to prove a claim of aggravated kidnapping, as that offense was alleged in Frank's indictment, . . . we conclude that unlawful restraint is a lesser-included offense of aggravated kidnapping. *See Schweinle v. State,* 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); *Jenkins v. State,* 248 S.W.3d 291, 298, n. 9 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (citing *Anderson v. State,* 125 S.W.3d 729, 731 (Tex. App.—Texarkana 2003, no pet.)).

*Frank v. State*, No. 09-09-00369-CR, 2011 WL 379041, at *2 (Tex. App.— Beaumont Feb. 2, 2011, pet. ref'd) (mem. op., not designated for publication).

17

aggravated kidnapping and attempted sexual assault; those facts show that he asked Mathow to use her phone, lured her to the apartment by refusing to return it, forced her into the apartment, a place where she was unlikely to be found— which is not an element of unlawful restraint—locked the apartment door, refused to return her phone, physically attacked her, pressed his knee against her throat, straddled her, and pulled up her shirt. There is no evidence from which a rational jury could conclude that if Dunn was guilty, he was guilty only of unlawful restraint. *See id.* Accordingly, even if Dunn's counsel could have requested submission of an instruction on the lesser included offense of unlawful restraint, the record does not reflect a reasonable probability that but for counsel's failure to do so, the result would have been different. *See Strickland*, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2071. Because Dunn has not articulated and our review of the record does not show that his counsel's alleged deficient performance prejudiced Dunn's defense as required by *Strickland's* second prong, we overrule his third issue. *See* 466 U.S. at 687, 104 S. Ct. at 2064.

## VII. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING A HEARING ON DUNN'S MOTION FOR NEW TRIAL

In his fourth and final issue, Dunn asserts that the trial court abused its discretion by denying and failing to conduct a hearing on his motion for new trial alleging ineffective assistance of counsel.

18

### A. Standard of Review and Applicable Law

A hearing on a motion for new trial is not an absolute right. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion. *Hobbs v. State*, 298 S.W.3d 193, 200 (Tex. Crim. App. 2009). A trial court abuses its discretion by denying a hearing on a motion for new trial if the motion and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* at 199; *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000).

"Before [a defendant] will be entitled to a hearing on his motion for new trial alleging ineffective assistance of counsel, [he] must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith*, 286 S.W.3d at 340–41; *see also Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993) (explaining that affidavits used to support appellant's motions must reflect that reasonable grounds exist for granting relief). When a defendant's motion for new trial asserting ineffective assistance of counsel fails to explain how counsel's allegedly unprofessional errors prejudiced him, he has failed to show that but for counsel's deficiency the result would have been

different and is not entitled to a nondiscretionary hearing on his motion for new trial.  *Smith*, 286 S.W.3d at 340–41.

## B.  Application of the Law to the Facts

Dunn's motion for new trial was supported by Dunn's affidavit.  Neither Dunn's motion for new trial nor his affidavit allege how the outcome may have differed but for his counsel's alleged unprofessional errors.  Because Dunn's motion for new trial failed to allege or argue prejudice—that is, but for his trial counsel's allegedly deficient performance, the result would have been different— the trial court did not abuse its discretion by not conducting a hearing on the motion.  *See id.*  Accordingly, we overrule Dunn's fourth issue.

## VIII.  CONCLUSION

Having modified the portion of the trial court's judgment that erroneously listed Dunn as having been convicted of "attempted aggravated sexual assault" to reflect that Dunn was convicted of "attempted sexual assault," having held that the evidence is sufficient to support Dunn's convictions for aggravated kidnapping and attempted sexual assault; and having held that his trial counsel's assistance was not unreasonably ineffective and that the trial court did not abuse its discretion by failing to hold a hearing on Dunn's motion for new trial, we affirm the trial court's judgment as modified.  *See* Tex. R. App. P. 43.2(b).

PER CURIAM

PANEL:  WALKER, PITTMAN, and BIRDWELL, JJ.

20

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 23, 2018